COMMONWEALTH *vs.* STRATHOULDA SOKORELIS & others.

SAME *vs.* PETER SOKORELIS & another.

SAME *vs.* JAMES SOKORELIS.

Middlesex. December 4, 1925. — January 12, 1926.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & SANDERSON, JJ.

*Arson. Conspiracy. Evidence,* Presumptions and burden of proof. *Accessory.*

At the trial together of two indictments, the first against a woman and one of two brothers-in-law and another man for conspiring to burn a building, and the second against the same brother-in-law and the other man for burning the building, there was evidence that the woman, with the assistance of the two brothers-in-law, ran a store in the building in question; that at about eleven o'clock on the night of the fire, the store was closed by the second brother-in-law; that half an hour later, the defendants in the second indictment were seen coming from the store; that shortly after one o'clock, a fire alarm was sounded, firemen entered, there was an explosion, very dense smoke and intense heat, empty cans on the floor, and a bottle of kerosene and a smell of kerosene.

The son of the owner of the building testified that after the fire he was invited to a conference at the house of the woman with her and the two brothers-in-law, when the second brother-in-law, acknowledging that he knew how to do that kind of business and had set two fires and that this was the third one, outlined a plan to get much insurance money, and, with a promise of recompense, urged the witness, the others not dissenting, to get his mother not to tell that she had seen the first brother-in-law and the other person leaving the premises before the fire. *Held*, that

(1) The evidence warranted a finding of guilty on the indictment for conspiracy;

(2) The evidence warranted a finding of guilty on the indictment for burning the building;

(3) The mere fact that there was evidence that the first brother-in-law and still another person were seen coming from the premises twenty-five minutes after those named as defendants in the second indictment were seen coming out did not make a verdict of guilty in the second case unwarranted, because such evidence might have been disbelieved.

There can be no conviction at the trial of an indictment under G. L. c. 274, § 4, for being accessory to the burning of a building unless there is evidence warranting a finding beyond a reasonable doubt that the defendant is "not a husband or wife, or, by consanguinity, affinity or adoption, the parent or grandparent, child or grandchild, brother or sister of the offender."

THREE INDICTMENTS, found and returned on September 9, 1924, respectively for conspiracy to burn a building, for burning a building, and for being an accessory after the fact to the burning of a building as described in the opinion.

In the Superior Court, the indictments were tried together before *Lawton*, J. Material evidence is described in the opinion. The defendant in each indictment, at the close of the evidence, moved that verdicts of not guilty be entered. The motions were denied. The defendants were found guilty and alleged exceptions.

*E. J. Tierney*, for the defendants.

*A. K. Reading*, District Attorney, *& R. T. Bushnell*, Assistant District Attorney, for the Commonwealth, submitted a brief.

CROSBY, J. In the first case the defendants Strathoulda and Peter Sokorelis and John Tsafarras were found guilty of conspiring to burn a building, the property of one Bosen. In the second case Tsafarras and Peter Sokorelis were found guilty of burning the building above referred to. In the

third case James Sokorelis was found guilty as an accessory after the fact to the burning of said building. The only question before us is, whether the evidence was sufficient to justify the convictions.

The evidence showed that the defendant Strathoulda Sokorelis was a tenant of a store in the building, where she was assisted by Peter and James, who were her brothers-in-law; that on the night of the fire the store was closed around eleven o'clock by James; that about half an hour later Tsafarras and Peter were seen coming out of it, and about five minutes before twelve Peter and one Bravos were seen leaving the store; that at 1:12 A.M. an alarm was sounded and when the firemen arrived the smoke was so dense they could not enter; that soon afterwards there was a flash similar to an explosion; that when an entrance was effected it was found that the fire was confined to the store; that there were two cans on the floor, the contents of which were not determined; that a bottle of kerosene was found and there was an odor of kerosene; that the heat was so intense that all the paper and paint were burned off the walls; that both the front and the rear doors were locked. Upon this evidence it is plain it could have been found that the fire was of incendiary origin.

The goods and fixtures in the store were insured for $3,500, and after the fire they were inventoried for about $3,700.

Theodore Bosen (whose mother owned the building) testified that on the second day after the fire he met James Sokorelis, who invited him to a Greek coffee house to have some coffee; that they were joined by Peter Sokorelis, who asked the witness to go to the house of Strathoulda; that after they arrived there, in the presence of these three defendants, the following conversation occurred: Mrs. Sokorelis said she had lost money by the fire; that she did not set it. She said to the witness, "I don't know maybe your mother put fire." He replied that his mother saw Peter and Tsafarras at half past eleven going out of the store. James then said to the witness: "Tell your mother not to say nothing" and she will get "good money" from the fire; that the insurance agent was his friend; that he (James) was going to get $3,000 in cash from the fire; that he knew how

to do that kind of business, and had set two fires, and that this was the third one; that he obtained $500 from the first and $2,800 from the second, and that he was going to get $3,000 from this fire if the witness's mother said nothing. This witness further testified in substance that James told him how he was going to get $3,000; that he had told the insurance agent that $700 worth of cigars were burned, but that the cigars were worth only $50; that he would get $1,500 for the soda fountain; that he had had it fifteen years and it was worth only $200. The witness further testified that James told him if any one came to his mother, to tell her not to say anything and he (James) would tell the insurance men to "give her good money." He also testified that he was given two drinks out of a bottle during this interview.

All these defendants, and Bosen, were Greeks who spoke English imperfectly, but there is nothing to show that each did not fully understand the above conversation. Neither Strathoulda nor Peter dissented from what was said by James, and could have been found to have agreed thereto; if so, it is plain the jury could have found that the three defendants who were present were engaged in a common plan and purpose to burn the building and obtain the insurance on the goods and fixtures in the store. Upon such findings verdicts of guilty against them for conspiracy were warranted.

The testimony of these three defendants, that the interview testified to by Bosen never occurred and that none of them knew him, might have been disbelieved by the jury. If it were found that their testimony was intentionally false in material particulars, it would be evidence of guilt. *Commonwealth* v. *Devaney*, 182 Mass. 33, 36. *Commonwealth* v. *Anderson*, 220 Mass. 142, 146. Although the defendant Tsafarras was not present during the conversation related by Bosen, the evidence that he left the store with Peter at half past eleven on the night of the fire, and that a little more than an hour and a half later it was discovered, that there were two keys to the store and that Peter had possession of one of them, but did not go to the store until some weeks thereafter, although he assisted in running it, together

with the other evidence, was sufficient to warrant a finding that the fire was set by them.

The evidence that about five minutes before twelve o'clock that night Peter and one Bravos were seen leaving the store might have been disbelieved by the jury. The discovery of the fire more than an hour and a half after Peter and Tsafarras were seen coming out of the store did not show that it was impossible for them to have set it. *Bowen* v. *Boston & Albany Railroad,* 179 Mass. 524, 527. This was a question of fact for the jury.

It follows that a verdict of acquittal could not properly have been ordered in the case against Peter and Tsafarras for burning the building.

If the jury found that Tsafarras participated in the act of setting the fire, it could also have been found as a rational inference from all the evidence that such act was the result of a conspiracy previously formed by the other defendants, to which he was a party, and was consummated by him and Peter. Upon all the evidence a verdict was not unwarranted that the three defendants named in the indictment for conspiracy were guilty.

The remaining question relates to the indictment against James Sokorelis, wherein he is charged with being an accessory after the fact to the burning of the building by John Tsafarras in violation of G. L. c. 274, § 4. This statute provides in part that "Whoever, not a husband or wife, or, by consanguinity, affinity or adoption, the parent or grandparent, child or grandchild, brother or sister of the offender, after the commission of a felony, harbors, conceals, maintains or assists the principal felon or accessory before the fact, or gives such offender any other aid, knowing that he has committed a felony or has been accessory thereto before the fact, with intent that he shall avoid or escape detention, arrest, trial or punishment, shall be an accessory after the fact, and, except as otherwise provided, be punished . . ." The exceptions in the statute relating to consanguinity and relationship being in the enacting clause are a part of the description of the offence and must be expressly nega-

tived in an indictment.  *Commonwealth* v. *Maxwell,* 2 Pick. 139.  *Commonwealth* v. *Hart,* 11 Cush. 130, 136.  *Lunt* v. *Aetna Life Ins. Co. of Hartford,* 253 Mass. 610.  The indictment in the case at bar expressly negatives the exceptions referred to in the statute and correctly sets forth the offence charged.  It follows the form set forth in G. L. c. 277, § 79, and plainly indicates that the Legislature regarded the exception in G. L. c. 274, § 4, as a part of the enacting clause of the statute and necessary to be pleaded as a part of the description of the offence.

G. L. c. 277, § 37, provides in part as follows: "If any statute shall prescribe a form of indictment in which an excuse, exception or proviso is not negatived, it shall be taken that it is not necessary to a complete definition of the crime that they should be negatived."  It is manifest from the language of this statute that, where the form of indictment prescribed by statute expressly negatives an excuse or exception, it is regarded as a necessary part of the description of the offence.  In order to convict the defendant the Commonwealth was bound at the trial to prove beyond a reasonable doubt that the defendant was not within any of the exceptions described in the indictment.

At the close of the evidence the defendant James Sokorelis moved that the court direct a verdict of not guilty.  This motion was denied and the defendant excepted.  The bill of exceptions recites that it contains all the material evidence. It does not appear from an examination of the exceptions that evidence was offered to show that the defendant was not within the exceptions recited in the indictment.  It follows that he was entitled to have a verdict directed in his favor.

In view of the conclusion reached as to this defendant upon the indictment charging him with being an accessory after the fact, we need not consider other questions raised in that case.  In the first and second cases the exceptions are overruled and in the third they are sustained.

*So ordered.*