## COMMONWEALTH *vs.* MAX RISEMAN.

Suffolk.    January 14, 1926. — October 16, 1926.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, CARROLL, WAIT,
& SANDERSON, JJ.

*Conspiracy.    Burning Insured Property.    Pleading, Criminal,* Indictment.
*Evidence,* Presumptions and burden of proof, Competency, Materiality.
*Practice, Criminal,* Exceptions.

The situation at the trial of three defendants under a single indictment
containing counts charging all three with conspiracy to burn property
with intent to injure insurers and also other counts charging the
burning of the property with such intent was *held* to be the same as if
there had been separate indictments for the misdemeanors and felonies
which for convenience were being tried together.

At the trial of an indictment charging in separate counts a conspiracy to
burn real and personal property with intent to injure an insurer and
a burning with a like intent, the evidence for the Commonwealth was
that the property was over-insured; that the defendant bought the real
property and, after making improvements, conveyed it as a gift to his
wife, an alleged conspirator; that she subsequently conveyed it to a
corporation which she organized and in which she owned substantially
all the stock except a few shares standing in the names of other alleged
conspirators; that policies of insurance, originally in her name, were
conveyed and made payable to the corporation; that the defendant and
his wife lived in a house from which access was had to the basement of
the store and which, because the bulkhead had been frozen, was the
only entrance to the basement without forcing the bulkhead; that a
fire of incendiary origin was discovered on the premises by firemen
at about midnight, about one hour and a half after the defendant and
an alleged conspirator, who was styled the treasurer of the corporation
which occupied the building, had left the premises; that shortly after
this fire, a second fire of incendiary origin was discovered in the base-
ment of the building.    On the counts charging conspiracy, the de-
fendant rested at the close of the evidence for the Commonwealth and
moved that a verdict of not guilty be ordered.    Subject to exception
by the defendant, the judge deferred ruling upon the motion until the
close of all the evidence, when the defendant moved that a verdict of
not guilty be ordered on each of the counts.    The motion was denied.
The defendant was found guilty.    *Held,* that

(1) The refusal by the judge to rule upon the motion at the close of
the evidence of the Commonwealth showed no error;

(2) Findings were warranted on circumstantial evidence that the
fire was set to obtain the insurance and that the defendant and the
alleged conspirator acted in combination to accomplish this result;

(3) The motion for a verdict of not guilty on the count charging conspiracy rightly was denied;

(4) The motion for a verdict of not guilty on the count charging felony rightly was denied.

At the trial above described, the defendant, after showing the mode of appraisement and valuation of the property by a witness who, although not an expert, made on behalf of the defendant an inventory or list of the property and its market value, offered the list. The list was excluded. *Held*, that no error in the exclusion appeared.

In the cross-examination of the witness above described, the district attorney read from a piece of paper classified as an inventory of the stock in trade of the corporation which occupied the building in question. *Held*, that such reading did not make the inventory itself admissible nor enable the defendant to demand and offer as his own exhibit the paper thus used.

At the trial above described, it was proper to admit in evidence on the question of the value of the property of the corporation occupying the building as compared with the amount of insurance, schedules in bankruptcy of the corporation, signed and verified by the treasurer, who was an alleged conspirator with the defendant and who, evidence tended to show, had left the building with the defendant about one hour and a half before the discovery of the first fire; and also to admit testimony in cross-examination of such treasurer as to the financial condition of the corporation before and after the fire.

INDICTMENT, found and returned on June 16, 1923, against the defendant, Max Riseman, and also against Mary Riseman, Leo Silver and Sophie Silver, containing four counts; the first count charged conspiracy to burn certain personal property with intent to injure the Phoenix Fire Insurance Company and the City of New York Insurance Company; the second count charged the burning of that property with intent to injure the insurers on Saturday, January 21, 1923; the third count charged a conspiracy to burn a building with intent to injure the National Liberty Insurance Company of America and the Westchester Fire Insurance Company; and the fourth count charged the burning of the building with intent to injure the insurers.

The indictment was tried before *Dubuque*, J. Material evidence, proceedings at the trial, and exceptions saved by the defendant are described in the opinion.

The only action taken by the trial judge upon the motions by the defendant made when he rested upon the counts for conspiracy at the close of the evidence of the Common-

wealth, as described in the opinion, was in the following words: "I will reserve a decision on this motion until all the evidence is in."

The defendant was found guilty on all counts and alleged exceptions.

The case was argued at the bar in January, 1926, before *Rugg*, C.J., *Braley, Carroll, Wait,* & *Sanderson*, JJ., and afterwards was submitted on briefs to all the Justices.

*S. A. Dearborn*, for the defendant.

*M. Caro*, Special Assistant District Attorney, for the Commonwealth.

BRALEY, J. This indictment was in four counts: two charging the defendant, in connection with Mary Riseman, his wife, and Leo Silver and Sophie Silver, with a conspiracy to burn on January 21, 1923, certain goods, wares and merchandise, shown to have been in the place of business of the Revere Public Market, Inc., which were insured in certain insurance companies, and, on the same date, to burn a building which was insured, with intent to injure the insurers; and two counts charging him and the other defendants with the actual burning of the above described property with intent to injure the insurers who are named in all four counts. The indictment was nol prossed as to Sophie Silver.

The jury returned a verdict of guilty as to Mary Riseman and Leo Silver on the first count (conspiracy to burn the personal property), and on the third count (conspiracy to burn the building); and a verdict of guilty on all the counts against Max Riseman, whose exceptions to rulings present the only exceptions before us.

G. L. c. 266, § 10, provides that "Whoever, with intent to injure the insurer, burns a building or any goods, wares, merchandise or other chattels belonging to himself or another, and which are at the time insured against loss or damage by fire, shall be punished by imprisonment in the State prison for not more than twenty years." An agreement to commit an act in itself criminal, or to be accomplished by criminal means is an indictable offence at common law. *Commonwealth* v. *Waterman*, 122 Mass. 43, 57. *Commonwealth* v.

*Dyer*, 243 Mass. 472. It could be found on evidence introduced in chief by the Commonwealth, that prior to January 20, 1923, the building situated in Revere, title to which was in the name of Mrs. Riseman, was leased by her to the Revere Public Market, Inc., doing business as a general grocery and meat market, the incorporators being Mary Riseman, Leo Silver and Sophie Silver; that before that date policies of insurance were placed on the building and on the fixtures and stock of the market, payable to Mrs. Riseman, but at the time of the fire these policies had been made payable to the corporation. On January 21, 1923, shortly after midnight, firemen were called to the premises where, upon entering the building, they found a blaze back of a counter, near which they noticed some small pieces of burlap smelling of kerosene oil. They extinguished the fire and returned to the station. Soon after, in response to a second summons, they returned and found a blaze in the cellar of the store near which were a few pieces of burlap having the smell of kerosene oil. Later, upon investigation, they discovered that the cellar of the store was connected directly with the cellar of the house owned and occupied by Mrs. Riseman. A further investigation, made by a member of the State police assigned to investigate fires, showed a bottle containing a small quantity of kerosene oil with the burlap bagging back of the counter where the fire started, together with some matches on the counter. There was, therefore, evidence that the fires were of incendiary origin. The Commonwealth introduced evidence that the property, at the time of the fire, was insured as described in the indictment, and of the total amount of outstanding insurance; that the policies which were first issued in the name of Mary Riseman, who paid the premiums, had been procured by the defendant Max Riseman; and that the insurance on the personal property was in excess of its fair value. It also appeared that the defendant had said there was insurance on the stock and fixtures amounting to $10,000; that with Leo Silver and two others he had left at "about 10:30" the evening before the fire, and went to a barber shop and thereafter with a number of others he visited the Somerset Turkish Baths

where he remained until ten o'clock Sunday morning; and that his wife and three children had gone to visit her mother. The Commonwealth, at this point, rested; whereupon counsel for the defendant and for Mary Riseman said, that the defendant rested on the counts for conspiracy, but not on the other counts, and asked for a directed verdict.

The first and third counts of the indictment charge that the defendant conspired to set the fire; the second and fourth counts charge the setting of the fire. While the counts for conspiracy were for misdemeanors and could be joined with the statutory counts, the offences were distinct and separate although embraced in one indictment. *Commonwealth* v. *Dyer*, 243 Mass. 472, 509. The situation at the trial was the same as if there had been separate indictments for the crimes which, for convenience, were being tried together. The jury, however, could find that the property was over-insured; that the defendant bought the real property and, after making improvements, conveyed it to his wife, as a gift, who subsequently conveyed it to a corporation which she organized and in which she owned substantially all the stock except a few shares standing in the name of the defendants Leo Silver and Sophie Silver; that policies of insurance, originally in her name, were conveyed to the corporation to which they were made payable; that the defendant and his wife lived in a house from which access was had to the basement of the store and which, because the bulkhead had been frozen, was the only entrance to the basement without forcing the bulkhead. There also was evidence that the defendant, the morning after the fire, which was discovered about midnight, admitted that he and the defendant Leo Silver, one of the stockholders and treasurer of the corporation, closed the store about an hour and a half before the discovery of the fire. Although the evidence was circumstantial, the jury could find that the fire was set to obtain the insurance and that the defendant Max Riseman and the defendant Leo Silver acted in combination to accomplish this result. The motion for a directed verdict, therefore, could not have been granted, and the refusal of the trial judge to rule at this stage of the trial

shows no error. *Commonwealth* v. *Cali*, 247 Mass. 20.
*Commonwealth* v. *Teregno*, 234 Mass. 56. *Commonwealth* v.
*Sokorelis*, 254 Mass. 454.

It also follows that the motion for a directed verdict, made
at the close of all the evidence, could not have been granted.

The remaining exceptions, in so far as argued, relate to
questions of evidence.

The defendant, after showing the mode of appraisement
and valuation of the property by a witness who, although
not an expert, made on behalf of the defendant an inventory
or list of it and its market value, offered the list. It was
excluded. This evidence, however, as well as his estimate
of the loss, was already before the jury. We perceive no
error in the exclusion of the inventory and appraisement of
loss which was prepared by the witness to aid the defendant
in making an adjustment with the insurance company.
After the witness had given his estimate of the market value
of the building and the merchandise and fixtures at the date
of the fire, the assistant district attorney in cross-examina-
tion "read from a piece of paper classified as an Inventory
of the Stock of the Revere Public Market, Inc." But this
did not make the inventory itself admissible nor enable the
defendant to demand and offer as his own exhibit, the paper
thus used. *Boyle* v. *Boston Elevated Railway*, 208 Mass. 41.
*Flaherty* v. *Boston & Northern Street Railway*, 210 Mass. 321.
The schedules in bankruptcy of the Revere Public Market,
Inc., signed and verified by the treasurer, and evidence
elicited in cross-examination of the defendant Leo Silver by
the Commonwealth, to which exception was taken by Rise-
man, as to the financial condition of the corporation before
and after the fire, were admissible on the question of the
value of the property as compared with the amount of in-
surance. The denial of his motion for a new trial on this
ground shows no error of law. *Commonwealth* v. *Cali*,
*supra.* The result is that the entry must be

*Exceptions overruled.*