COMMONWEALTH vs. ROBERT G. WARD.

Suffolk.    April 14, 1982. — June 15, 1982.

Present: HALE, C.J., CUTTER, & GRANT, JJ.

*Arson. Evidence,* Expert opinion. *Due Process of Law,* Delay in com-
mencement of prosecution. *Practice, Criminal,* Directed verdict,
Delay in commencement of prosecution, Instructions to jury.

At the trial of indictments charging arson and burning of a building with
intent to defraud the insurer, evidence that the defendant was experi-
encing financial difficulties related to the property, that he had
threatened to evict the tenant of the room in which the fire had
started, that the fire had two points of origin, that the defendant had
been in the building shortly before the fire was reported and that he
lied to investigators in denying that he had a key to the room in which
the fire had started warranted denial of the defendant's motion for re-
quired findings of not guilty. [38-41]
At the trial of indictments charging arson and burning of a building with
intent to defraud the insurer, the judge did not err in admitting expert
testimony that the fire had two points of origin, despite the defendant's
contention that the opinions of the experts were based on assumptions
unsupported by the record. [41-42]
A delay of five years and three months between the date of a fire and
the return of arson indictments did not require dismissal of the indict-
ments, where certain information received from an informant some
four years after the fire prompted the Commonwealth to reopen its in-
vestigation, resulting in the indictments. [42-43]
At the trial of arson indictments the judge was not required to instruct
the jurors that they should disregard the opinions of the Common-
wealth's experts unless they should first find that the Commonwealth
had proved all of the facts assumed by those experts in reaching their
opinions, where there was no real dispute about any of the facts on
which the opinions of the experts were based. [43-44]

INDICTMENTS found and returned in the Superior Court
Department on March 13, 1980.

The cases were tried before *Meyer,* J.

*Francis J. DiMento* for the defendant.

*Harvey A. Schwartz,* Special Assistant Attorney General, for the Commonwealth.

HALE, C.J.  On December 9, 1974, a fire broke out in the defendant's building in Boston.  Approximately five years later he was indicted for arson (G. L. c. 266, § 1) and for burning a building with the intent to defraud the insurer (G. L. c. 266, § 10).  After a jury trial, he was convicted on both indictments.  On appeal the defendant argues that the trial judge erred in denying his motion for required findings of not guilty, in refusing to dismiss the indictments for pre-indictment delay, and in refusing to strike the opinions of the Commonwealth's two arson experts concerning the origin and nature of the fire.  He also claims error in the judge's refusal to give a requested charge concerning expert testimony.  We affirm.

1.  We address the defendant's contention of error in the denial of his motion for required findings of not guilty.  In doing so we are to determine whether the evidence "most favorable to the Commonwealth was sufficient to permit the jury to infer . . . the essential elements of the crime charged," *Commonwealth* v. *Dunphy,* 377 Mass. 453, 456 (1979), and to persuade the jury of the existence of each of those elements beyond a reasonable doubt.  *Commonwealth* v. *Rhoades,* 379 Mass. 810, 815 (1980).

Based on the evidence introduced by the Commonwealth during its case in chief, the jury could have found the following facts.[1]  The defendant paid $95,894 for 194 Beacon Street ("the property") in December, 1971.  He was able to purchase that property without putting down a substantial amount of money.  However, to do so he was required to assume three mortgages totalling more than $92,000.

---

[1] The defendant renewed his motion for a required finding of not guilty at the close of all the evidence.  We have reviewed the evidence introduced after the Commonwealth presented its case in chief.  As the Commonwealth's case did not in any way deteriorate because of that evidence, our determination that the initial motion was properly denied disposes of the later motion as well.  See *Commonwealth* v. *Kelly,* 370 Mass. 147, 150 n.1 (1976); *Commonwealth* v. *Walter,* 10 Mass. App. Ct. 255, 259-260 (1980).

The defendant experienced financial problems with the property almost immediately. Mortgage payments due for May through September of 1972 were not made until September 15 of that year. Payments for the remainder of 1972 were also late. In an effort to remedy those difficulties, the defendant in December, 1972, refinanced the property with the bank which held one of the three existing mortgages. Under that refinancing scheme, the bank paid off the other two mortgages and took from the defendant a single mortgage for $95,000. Although the defendant received some funds as a result of that refinancing he remained unable to pay his mortgage installments on time. Over the next two years (ending in the month of the fire) eight monthly payments were late. During that period the bank sent the defendant no less than five notices demanding immediate payment and threatening to turn the matter over to its attorneys for the commencement of foreclosure proceedings.

In early 1974 the defendant decided to convert the property, which he had been operating as rental units, into condominiums. Four of the property's five units were sold in 1974. As each of those units was sold, the defendant refinanced his indebtedness to the bank. As a result, when the fourth unit was sold in October, 1974, the defendant was left with only unit # 2 (a duplex comprised of the first and second floors of the property) subject to a $30,000 mortgage. The defendant occupied the lower floor of that unit and rented the two rooms on the upper floor. In June, 1974, the condominium trust, and the individual owners including the defendant, purchased an insurance policy protecting the entire building against loss from fire in the amount of $136,000.

The conversion of the building to condominiums did not end the defendant's problems. Despite the reduction in the amount of his monthly mortgage payments, he remained unable to make them on time. Disputes with the other condominium owners also broke out concerning such things as the apportionment of property taxes. Finally, the defendant experienced difficulties with the tenant of the second-

floor room in which the fire occurred. In October, 1974, the defendant requested that the tenant move. He renewed that request several weeks before the fire, informing her that if she did not leave, she would "find her things on the street and [that he did not] want to go through the formality of evicting [her]." Some time during this period the defendant demanded and obtained a key to the tenant's room.

The fire broke out in the second-floor room some time around 11:00 A.M. on December 9, 1974. The fire had two points of origin, one in a closet and the other by a cabinet in the kitchen area. At least the latter had been started with an accelerant. Although the fire was quickly extinguished the room was left uninhabitable.

The defendant spoke with a member of the arson squad some time during the afternoon of the day of the fire. In that conversation he admitted having been in the building "sometime between 10 and 11" that morning but denied having a key to the room in which the fire occurred. On January 23, 1975, the defendant's insurance company issued a check to the condominium trust and the defendant in the amount of $3,200. The bulk of that check was used by the bank to bring the defendant's mortgage account up to date.

The foregoing includes a number of facts which have been recognized as among those "generally considered significant in arson cases for the purpose of collecting insurance proceeds." *Commonwealth* v. *Walter*, 10 Mass. App. Ct. 255, 260 (1980). To begin with, from those facts the jury could have concluded that the fire had been intentionally set. See *Commonwealth* v. *Selesnick*, 272 Mass. 354, 359-360 (1930). The defendant had threatened the tenant of the burned room with eviction and was continuing to experience financial difficulties in connection with his investment in the property. See *Commonwealth* v. *Bader*, 285 Mass. 547, 577 (1934); *Commonwealth* v. *Niziolek*, 380 Mass. 513, 527-528 (1980). The defendant had a key to the burned room and admitted having been in the building shortly before the fire was reported. See *Commonwealth* v. *Sokorelis*, 254 Mass. 454, 457-458 (1926). The jury could

also have concluded that the defendant had lied to investigators when he denied having a key to the burned room and that this was indicative of guilt (*Commonwealth* v. *Vellucci*, 284 Mass. 443, 446 [1933]), and that he had received a direct financial benefit from the fire. See *Commonwealth* v. *Walter*, 10 Mass. App. Ct. at 260. Viewed together, these facts warranted the jury in finding the crimes charged in the indictments proved beyond a reasonable doubt. *Commonwealth* v. *Bader*, 285 Mass. at 577. See *Commonwealth* v. *Riseman*, 257 Mass. 254, 258 (1926); *Commonwealth* v. *Mathews*, 10 Mass. App. Ct. 888 (1980). Contrast *Commonwealth* v. *DeRome*, 6 Mass. App. Ct. 900 (1978).

2. The defendant raises several points in support of his contention that the trial judge erred in denying his motion to strike the opinions of Johnson and Carter, the Commonwealth's arson experts. Of those, the only points raised below and therefore properly before us deal with certain assumptions which the defendant alleges were made by those experts in reaching their opinions concerning the origin and nature of the fire. Before considering that contention, however, we note that the defendant does not question that a fire started in the closet. He quarrels only with the experts' opinions that a second and independent fire began in the area of the kitchen cabinet and with their rejection of his hypothesis that the cabinet could have been ignited by burning debris pulled from the closet by the firemen in the course of extinguishing the blaze. Specifically, the defendant contends that Johnson's opinion was based on an assumption that the debris shown in the photographic exhibits was on the floor when the fire started. He further claims that Carter assumed that the debris had been extinguished in the closet and only then removed to the floor. Contending that those assumptions have no support in the record, the defendant argues that his motions to strike the opinions of both experts should have been allowed.

It is settled that an expert may base an opinion on facts outside his personal knowledge only when those facts are

supported by the record. See Liacos, Massachusetts Evidence 114-117 (5th ed. 1981). Nevertheless, application of that principle to the present facts fails to demonstrate that there was any error in the trial judge's rulings. Even if we were to assume that there was no evidence in the record to support the proposition that the debris was on the floor when the fire started, we would still conclude that the trial judge properly admitted Johnson's opinion, which was limited to a determination that the fire had two points of origin. Based on his observation of the scene immediately after the fire had been extinguished, Johnson reached his conclusion because of the absence of any connection, or "fire tracks," between the two areas which had burned. Hence, his opinion that there were two points of origin was in no way dependent on the location of the debris at the time the fire broke out.

The defendant's attack on Carter's opinion ignores the testimony of Chief Shaughnessy that standard fire fighting procedures would result in the debris being extinguished before being pulled out of the closet and that those procedures were followed in extinguishing this blaze. Carter also testified that pulling the debris out of the closet after it had been extinguished was "normal procedure." Furthermore, like Johnson's, Carter's opinion was simply not dependent on the assumption which the defendant now attacks. Carter's opinion that the fire had been set was based in part on the inverted "V" burn pattern on the cabinet in the area of what he believed to be the second fire. Carter stated that such a pattern resulted from the use of an accelerant such as the lighter fluid present in the photographs and could not have been caused by burning debris removed from the closet. Hence, even if Carter had improperly assumed that the material in the closet had been extinguished before it was removed, his opinion that there were two separate fires was not based on that assumption, and the judge was right in refusing to strike his testimony.

3. The judge properly denied the defendant's motions to dismiss based on the five-year, three-month, delay between

the fire and the defendant's indictment. To be entitled to the "drastic remedy of dismissal" on this basis (see *Commonwealth* v. *Best*, 381 Mass. 472, 483-484 [1980]), the defendant must show that the delay substantially prejudiced his defense and that it was intentionally or recklessly caused by the Commonwealth. *Id. Commonwealth* v. *Imbruglia*, 377 Mass. 682, 688-691 (1979). See *Commonwealth* v. *Geoghegan*, 12 Mass. App. Ct. 575 (1981). Even if we were to assume that the defendant produced sufficient evidence to satisfy the first part of that two-part analysis, we would still uphold the judge's rulings because of the absence of any evidence in the record that the Commonwealth had intentionally or recklessly caused the delay. The only explanation for the delay appearing in the record was offered by the Commonwealth and concerned information, obtained from an informant in 1978, linking the defendant to several additional fires. That information prompted the Commonwealth to reopen its investigation which resulted in the present indictments. That explanation fully supports the trial judge's finding that there was no evidence of even a negligent delay in the Commonwealth's handling of the investigation and its procurement of the indictments. In turn, that finding compels the conclusion that the delay did not amount to a deprivation of the defendant's constitutional rights.

4. Finally, the defendant alleges that the judge erred by refusing to instruct the jury in accord with either of his requested instructions 12(a) or 12(b). Those requests sought an instruction to the effect that the jurors should disregard the opinions of the Commonwealth's experts unless they should first find that the Commonwealth had proved all of the facts assumed by those experts in reaching their opinions. Although the judge included no such instruction in his charge, he informed the jurors that the testimony of the experts, like that of all witnesses, could be disbelieved in whole or in part.

In considering this final alleged error, we recognize that when an expert witness has given an opinion based on as-

sumed facts, an instruction such as that requested by the defendant in this case is proper and should be given in those situations in which the expert's assumptions involve disputed questions of fact which were material to the opinions reached. See *Commonwealth* v. *Taylor*, 327 Mass. 641, 649 (1951); *Commonwealth* v. *Bjorkman*, 364 Mass. 297, 306 (1973). Here, however, the only material fact assumed by either of the Commonwealth's experts was Carter's assumption that the photographs were accurate representations of the scene as it appeared immediately after the fire had been extinguished. Johnson took the photographs and testified as to their accuracy. As no claim having any substance was made at trial that these photographs were inaccurate,[2] there was no occasion for the judge to instruct the jury in accordance with the defendant's requests.

*Judgments affirmed.*

---

[2] The only objection made by the defendant to the introduction of the photographs was based on his contention that a shoe appearing in one photograph was missing from another, thereby indicating some disturbance of the scene. That objection ignored the different angles from which the two photographs had been taken and the distinct fields of view which they depict.