Commonwealth vs. Doris DeStefano.

Suffolk.  April 25, 1983. — June 22, 1983.

Present: Greaney, Cutter, & Perretta, JJ.

*Arson. Practice, Criminal,* Variance, Waiver of trial by jury, Transcript of evidence. *Constitutional Law,* Waiver of trial by jury. *Evidence,* Hearsay, Common criminal enterprise. *Burning Insured Property.*

Even assuming that at the trial of indictments charging violations of G. L. c. 266, §§ 1 and 10, there was insufficient evidence to warrant a finding that liquid accelerants were used in fires ignited by a match or open flame, as stated in the Commonwealth's bill of particulars, the defendant was not entitled to required findings of not guilty, where the essential elements of the crimes charged had been correctly stated and any insufficiency of the evidence respecting the use of liquid accelerants would not have prejudiced the defense. [212-213]

A defendant charged in one count of an indictment with burning a dwelling house and in a second count with burning the same dwelling house at a later date, in violation of G. L. c. 266, § 1, was entitled to a required finding of not guilty on the second count where there was unrebutted evidence at the trial that the building in question was not habitable at the time of the second fire as a result of damage caused by the first. [213-215]

Evidence at the trial of an indictment charging burning of a dwelling house was sufficient to warrant a conviction even though it was not established whether the defendant set the fire herself or procured another to do it. [215-217]

The fact that a defendant charged with burning of a building with intent to defraud an insurer in violation of G. L. c. 266, § 10, had not signed or submitted the forms which were required to make a claim under her insurance policy did not, in the circumstances, preclude her conviction. [217-218]

Where a judge in holding a colloquy with a defendant to determine whether the defendant's waiver of a jury trial was made voluntarily and intelligently failed to explore the defendant's awareness of the fundamental distinctions between bench and jury trials, this court held that the defendant was entitled to a new trial before a jury. [218-219] Cutter, J., dissenting.

At the trial of indictments arising from the burning of a dwelling house either by the defendant or by a confederate, there was no error in

the admission in evidence of statements, made by the confederate some time after the fire, giving false names for himself and the defendant. [219-220]

At the trial of indictments arising from the burning of a dwelling house, there was no error in the admission in evidence of a certain police report. [220]

At a retrial of indictments arising from two fires in a building, a statement made by a certain person to a police officer concerning the second fire should be excluded if offered through testimony of the police officer or his written report, rather than through the testimony of the person making the statement. [221]

This court suggested that when either the Commonwealth or the defendant decides to order daily transcripts of a criminal trial, requiring the removal of portions of the record of testimony from the courtroom while testimony is being taken, the judge and opposing counsel should be notified as soon as practicable in order to preclude any possible prejudice to the conduct of cross-examination. [221]


INDICTMENTS found and returned in the Superior Court on June 9, 1978.

The cases were heard by *Larkin*, J., a District Court judge sitting under statutory authority.

*Ronald Ian Segal* for the defendant.

*Jeffrey B. Abramson*, Assistant District Attorney, for the Commonwealth.

GREANEY, J.   The defendant, · Doris DeStefano, was convicted following a jury-waived trial in the Superior Court on an indictment (no. 78-2510) charging two counts of arson of a dwelling house, G. L. c. 266, § 1, and an indictment (no. 78-2513) charging two counts of burning property with intent to defraud an insurer (G. L. c. 266, § 10).   She was sentenced to concurrent State prison terms on all of the convictions, with the sentences suspended for a period of two years' probation.[1]   The defendant claims (1) that her motion for required findings of not guilty should have been allowed as to all charges; (2) that she was improperly denied a continuance to obtain the testimony of a necessary defense witness; (3) that the colloquy held with

---

[1] Conspiracy charges arising out of the same incidents were dismissed.

her by the trial judge concerning waiver of trial by jury was deficient; (4) that certain evidence was erroneously admitted to her prejudice; and (5) that the Commonwealth's undisclosed order for daily transcripts hampered her ability to cross-examine witnesses.

On the third point a majority of the panel conclude that there was error and that a new trial before a jury is necessary. On all the other points the members of the panel are in agreement.

We shall refer to certain evidence and courtroom procedures as they become relevant to our discussion. We preface that discussion, by way of orientation, by noting that the judge had before him evidence from which he could have concluded the following. At approximately 7:15 A.M. on January 9, 1978, Winchester police Sergeant Francis Manzi, responding to a radio call reporting a fire, arrived at the defendant's house at 10 Wellington Road. He kicked open the locked front door, quickly ascertained that no one was in the house, and observed smoke. No flames were seen. An electric oven in the kitchen had been turned on and the rear door had been shut but not locked. There was no sign of forced entry. Firefighters arrived shortly thereafter and discovered in a hallway a fire, which they determined to be of "suspicious origin." The defendant arrived at the house in her pink Cadillac automobile ("the only one of its kind in Winchester," according to Sergeant Manzi) soon thereafter, accompanied by Leslie Surrette, who resided there with her. The defendant appeared visibly upset. Later that morning the fire chief asked her to come to the station to discuss the incident. The defendant expressed reluctance, explaining that she was tired and had been out all night. She eventually agreed to meet with the chief. At that meeting (held at approximately 9:00 A.M. on the day of the fire, and also attended by Surrette and one of the defendant's sons), the defendant was abusive to police representatives and indicated that she would not answer their questions.

After the January 9 fire, the defendant did not live in the house. The next day, she telephoned the fire chief and com-

plained that she was not making headway with her insurance company on a settlement. On January 12, 1978, three days after the fire, the defendant, accompanied by Surrette, appeared in the Burlington offices of her insurer, where she was loud and boisterous and complained of having no money and no place to stay. She said she was sleeping in her car and attempted (without success) to obtain an advance on insurance proceeds.

On January 29, a second fire broke out at 10 Wellington Road. Approximately one hour before the fire department arrived the defendant's distinctive pink Cadillac was observed in front of the house. The trunk of the vehicle was open and a bulky garbage bag was seen on the street behind the car. The garage door was open. Surrette had been seen leaving the house at some time on that day. Firefighters and police officers who responded discovered a fire burning in a basement playroom. In an upstairs closet they found a piece of clothing smelling of kerosene, on top of which was a candle over which had been placed a cardboard tube pierced with unlit matches. A second article of clothing smelling of kerosene was discovered in the garage. On January 30, 1978, the day after this fire, the defendant called the fire chief and inquired about the investigation of the first fire. The chief informed her of the fire of the preceding day and the defendant sounded surprised. On this date the defendant stated that she had no set address and was moving around from one motel to another.

The judge also could have found that in December, 1977 (about one month before the fires), the defendant and Surrette approached a real estate agent about renting an apartment, and that, with the agent's help, they located an apartment in Malden. The apartment was rented in Surrette's name,[2] effective December 15, 1977. The application stated that two adults would occupy the unit and listed a California address for Surrette. The landlord was told that the defendant would be coming in to cook, clean and

---

[2] The rental application was signed "Lester Surrette."

help out Surrette. The defendant inquired of the landlord if personal property could be moved in prior to December 15. Beginning Christmas morning, the defendant and Surrette were seen moving items into the apartment. This activity took place over a period of approximately one week, always during early morning hours.

On February 1, 1978, there was a fire in the Malden apartment house. An upstairs tenant discovered the fire and warned Surrette, the defendant and a young man (apparently the defendant's son), who were asleep in the apartment. After the fire, Surrette told a fire fighter that his name was "Wesley Lanete." The landlord's daughter overheard this and called to Surrette's attention the discrepancy between this name and the one on the rental application ("Lester Surrette"). Both Surrette and the defendant told her that the name on the application was a mistake. The defendant refused to identify herself to fire fighters, and Surrette later told a police officer, in the defendant's presence, that her name was "Dorothy Marrota." The defendant did not correct this misinformation. On the day of the fire there, the Malden apartment was furnished with several pieces of heavy furniture and contained a number of boxes of personal effects.

At the time of the January fires the defendant had two mortgages on the Wellington Road property and was several months behind on her payments. In December, 1977, she had arranged to have the insurance coverage on the house increased by some $15,000 after a discussion with her insurance agent concerning the adequacy of her coverage.

1. *The motion for required findings of not guilty.* The defendant argues that in four particular respects the evidence was insufficient to support convictions, necessitating required findings of not guilty which, on proper motion, see Mass.R.Crim.P. 25(a), 378 Mass. 896 (1979), were denied by the trial judge. We address these claims in order.

a. *Use of liquid accelerant.* The defendant asserts that the Commonwealth was bound by its bill of particulars to prove, as alleged in the bill, that the arsons were accom-

plished by means of "a liquid accelerant of unknown identi-
ty . . . used along with ignition by means of an open flame
or match" and that since the evidence introduced was insuf-
ficient to satisfy this burden, directed findings were re-
quired. We disagree.

"General Laws c. 277, § 35, provides that a variance be-
tween the allegations and proof shall not be a ground for the
defendant's acquittal 'if the essential elements of the crime
are correctly stated, unless he is thereby prejudiced in his
defence.'" *Commonwealth* v. *Day*, 387 Mass. 915, 922
(1983). The defendant does not contend that the essential
elements of arson have not been alleged. Nor does she claim
that any variance between the particulars and the proof at
trial had the effect of prejudicing her defense. She asserts
that the evidence was not of sufficient weight to warrant a
finding that liquid accelerants were used in fires ignited by
a match or open flame. Neither the use of accelerants nor
any particular method of ignition is an essential element of
arson. At trial, the defense did not contend that the fires
were accidental, claiming instead that they were set by
someone "out to get" either her or Surrette. Thus, even if
we accept the defendant's contention that proof of the use of
liquid accelerants as alleged in the particulars was lacking,
that failure of proof must be seen as relative only to a col-
lateral issue and not prejudicial to the defense in any way.[3]
See *Commonwealth* v. *Conceicao*, 10 Mass. App. Ct. 899
(1980). See also *Commonwealth* v. *Atkinson*, 15 Mass.
App. Ct. 200, 202-203 (1983).

b. *Characterization as "dwelling house."* The crime de-
fined by G. L. c. 266, § 1, as appearing in St. 1948, c. 43,
§ 1, may only be committed against "a dwelling house, or a

---

[3] Moreover, based on our review of the evidence, we are of opinion that
the Commonwealth's evidence was sufficient to establish beyond a
reasonable doubt that both fires involved liquid accelerants and ignition
by match or open flame. The defendant's argument to the contrary goes
to the weight which should be accorded certain testimony — a question
which, in each instance, could reasonably have been resolved against her
by the judge as finder of fact.

building adjoining or adjacent to a dwelling house, or a building by the burning whereof a dwelling house is burned." No evidence was introduced as to whether 10 Wellington Road was adjacent to or adjoined any dwelling house. The fires were totally contained within the structure itself. As a consequence, a conviction under G. L. c. 266, § 1, would require evidence to warrant a finding that the house was a dwelling house. The defendant asserts that the evidence requires the conclusion that as a result of the damage caused by the first fire the structure had ceased to be a dwelling house, thereby precluding her conviction under G. L. c. 266, § 1, for the second fire on January 29. The assertion has merit.

The words "dwelling house" are defined by the statute as including "all buildings used as dwellings such as apartment houses, tenement houses, . . . or other buildings where persons are domiciled." It is not necessary to prove actual occupancy. There must, however, at least be proof that the structure in issue is *capable* of being occupied as a dwelling and domicil. The Commonwealth's case contains unrebutted evidence, in the form of both contemporaneous written reports admitted as exhibits and the testimony of several disinterested witnesses, that the defendant's house was rendered "uninhabitable" by the January 9 fire, apparently because of heavy smoke and soot damage. The only other evidence on this issue concerned the presence in the house of certain pieces of furniture, appliances and clothing, which had been exposed to the same damaging elements. No witness testified that the house was habitable after the first fire, and there was nothing of substance in the circumstantial evidence or elsewhere which would give rise to such an inference. We recognize that in virtually every case the question whether a building is in fact a "dwelling" is one for the fact finder. See and compare *Commonwealth* v. *Murphy,* 1 Mass. App. Ct. 71, 75 (1973) (unoccupied building found to be dwelling on basis of facts). Nevertheless, after reviewing the evidence in the light most favorable to the Commonwealth under the relevant standard, see *Commonwealth* v.

*Latimore,* 378 Mass. 671, 676-677 (1979), we are left with the conviction that the Commonwealth's proof was insufficient to warrant a finding beyond a reasonable doubt that the defendant's house was a "dwelling house" at the time of the second fire. The motion for a required finding of not guilty should have been allowed as to the count of indictment no. 78-2510 charging arson for the January 29, 1978, burning.[4]

c. *Proof of direct participation or joint venture.* The defendant argues that there was insufficient evidence to connect her to acts of arson either as a direct participant or on a joint venture theory. We do not agree.

General Laws c. 266, §§ 1 and 10, do not differentiate between those who wilfully and maliciously set fire to, burn or cause the burning of the subject building and those who aid, counsel or procure the burning. A finding of guilty of arson can be predicated upon a finding that the defendant either directly participated in the burning or aided, counseled or procured another to do it, even though the fact finder may not be able to determine which type of misconduct actually occurred. Put another way: it is enough to support a conviction if it can be determined, beyond a reasonable doubt, that one of these forms of misconduct must have occurred, although the fact finder cannot say with certainty which one.

The proof here, viewed under the *Latimore* test, would warrant the defendant's conviction of arson on January 9. Whether the judge could find that that fire was set by the defendant or at her behest "depends upon the inferences rightly to be drawn from all the evidence. It is not required

---

[4] This does not leave the Commonwealth without a remedy in a case like this. A defendant who attempts to complete the burning of a dwelling rendered uninhabitable as the result of a prior arson can be indicted under G. L. c. 266, § 2, for burning of a building. Indeed, the defendant may now be indicted for that crime if the prosecutor chooses. The elements of G. L. c. 266, § 1, and § 2, are materially different so that a defendant's acquittal on the former will not preclude prosecution on the latter. See *Salemme* v. *Commonwealth,* 370 Mass. 421, 423 (1976); *Commonwealth* v. *Jones,* 382 Mass. 387, 393 (1981).

that the inferences be unescapable or necessary; it is enough if they are not too remote according to the usual course of events, and if all the circumstances including inferences are of sufficient force to bring minds of ordinary intelligence and sagacity to the persuasion of incendiarism beyond a reasonable doubt." *Commonwealth* v. *Cooper*, 264 Mass. 368, 373 (1928). Here, the defendant and Surrette were seen, driving in the defendant's distinctive automobile, in the vicinity of the house at 1:45 A.M., 3:00 A.M. and 7:00 A.M. on the day of the first fire. It could be inferred that when seen at 7:00 A.M. they were on their way to the fire station where Surrette reported the fire. There was testimony that the fire could have started about the time when the defendant and Surrette were seen in the neighborhood earlier. There was expert testimony that liquid accelerants had caused the fire to build to a high intensity soon after ignition. This caused the fire to quickly consume all of the oxygen available to support combustion in the closed building, after which it smoldered until the fire department arrived. It could be inferred that the defendant and Surrette decided to report the fire themselves after it became apparent from their observation of the house that the fire had not developed in such a way as to call the attention of others to it. The judge could have disbelieved the defendant's claim (in a statement given to an insurance adjuster) that she was not in the area when the fire started, accepting as true Sergeant Manzi's testimony of first-hand observations of the defendant in Winchester at relevant times.

The defendant was two months behind in payments on her first mortgage and four months in arrears on the second mortgage. Despite this, it could be found that she initiated a discussion with her insurance agent concerning the adequacy of her fire coverage and agreed to a $15,000 increase in coverage resulting in increased premium charges. This evidence strongly suggests a motive. See *Commonwealth* v. *Reynolds*, 338 Mass. 130, 133 (1958); *Commonwealth* v. *Niziolek*, 380 Mass. 513, 530 (1980). Her distinctive pink Cadillac was again seen at the house on the day of the second

fire shortly before it broke out, and Surrette was seen leaving the premises on that day. The judge could infer that it was not a coincidence that the defendant, whose whereabouts were unknown to fire officials, called the Winchester fire chief on the day after the second fire, conveniently allowing the chief a timely opportunity to inform her of the new damage.

Finally, there is the matter of the Malden apartment. It could be inferred that the apartment was rented to provide storage space for items which the defendant chose not to sacrifice to the intended fire in Winchester. It could also be found that the defendant and Surrette were living there during the period in January when the defendant was telling fire officials and insurance personnel that she had no set address and was moving around. Her refusal to divulge her name to police after the Malden fire and her silence upon Surrette's statement to police that her name was "Dorothy Marrota" represent some evidence of consciousness of guilt. See *Commonwealth* v. *Fancy*, 349 Mass. 196, 201 (1965). In sum, a sufficient "chain of circumstances" — composed of evidence of motive, opportunity, control of the premises, increase in insurance, concealment and misleading statements — was forged, allowing the judge to find that the defendant, Surrette (the latter acting at her request and with her aid and counsel), or both, willfully and maliciously set the fires. See *Commonwealth* v. *Mathews*, 10 Mass. App. Ct. 888, 889 (1980). Given the scope of the arson statutes, we reject the notion, suggested by the defendant, that this analysis improperly superimposes a conspiracy or accessory theory of criminal liability on a case brought under indictments charging her as a principal. The culpable conduct which could have been permissibly inferred from the evidence here is encompassed within the definition of the substantive offenses.

d. *Intent to defraud the insurer.* The defendant submits that since she neither signed nor submitted the forms which were required to make a claim under her insurance policy, there was insufficient evidence to warrant a finding that

she harbored an intent to defraud the insurer. It appears probable that the defendant did not comply with the policy provisions governing submission of losses for payment. There is no doubt, however, that she considered the insurer liable for payment. As early as the day after the first fire, she complained to the fire chief about lack of progress in procuring insurance payments. She appeared personally in the insurer's office to seek advances and made several calls to an adjuster for the same purpose. The judge could have inferred that the failure to complete the proper forms was at least in part a result of the inability of insurance company representatives to reach the defendant due to her intentional concealment of her whereabouts. Intent to defraud an insurer "may be and generally is inferred from circumstances." *Commonwealth* v. *Cooper*, 264 Mass. at 374. The evidence of the defendant's "financial embarassment," see *Commonwealth* v. *Haddad*, 250 Mass. 391, 397 (1924), her immediate and frantic efforts to obtain insurance advances and the circumstances surrounding the rental, use and concealment of occupation of the Malden apartment all contribute to a permissible inference of intent to defraud. The motion for required findings of not guilty on the charges of arson with intent to defraud an insurer was properly denied.[5]

2. *Waiver of jury trial.* The defendant contends that the colloquy conducted with her by the trial judge with respect to her waiver of trial by jury failed to meet the standards established in *Ciummei* v. *Commonwealth*, 378 Mass. 504 (1979), and that as a result the record does not reflect a voluntary, knowing and intelligent waiver of that right. A majority of the panel conclude that the argument has merit.

---

[5] The conviction on the count of this indictment premised on the January 29 fire is unaffected by our reversal of the arson conviction under G. L. c. 266, § 1, arising out of the same incident because the statute dealing with burning property with intent to defraud an insurer, G. L. c. 266, § 10, is not limited in its operation to burnings of dwelling houses.

The colloquy, which we have set out in the margin,[6] reflects (with more intensity) the same shortcomings as the colloquy in *Commonwealth* v. *Schofield, ante* 199, 200-201 (1983), also decided this day. Since analysis of the defect would replicate the detailed discussion in *Schofield,* there is no need to repeat ourselves here. It is sufficient to note our conclusion that the colloquy did not satisfactorily explore the defendant's awareness of the fundamental distinctions between bench and jury trials and thereby failed to furnish the judge with an adequate foundation in fact upon which to base a decision that the defendant's waiver was sufficiently informed. Nothing in the record suggests that at the time of the colloquy the defendant had acquired the requisite information independently. See *Schofield, ante* at 205 n.5. The defendant must as a consequence be given a new trial before a jury on the three remaining charges. See *Commonwealth* v. *Thompson,* 15 Mass. App. Ct. 974 (1983); *Commonwealth* v. *Abreu,* 15 Mass. App. Ct. 1006 (1983); *Commonwealth* v. *Schofield, ante* at 205.

3. *Retrial.* Reversal on *Ciummei* grounds obviates the need to discuss the denial of the defendant's motion for a continuance on the day of trial since the issue is unlikely to arise again at retrial.

The defendant has raised four other issues, however, which might recur below; we therefore decide them now in the interest of expediency.

a. The defendant objected to the admission of misstatements of identity made by Surrette at the time of the fire

---

[6] The colloquy consisted of the following exchange:

THE COURT: "Mrs. DeStefano, I just wanted to inquire now. You are going to proceed to a trial without a jury. You've conferred with [your attorney] on that and this is your decision?"

THE DEFENDANT: "Yes."

THE COURT: "And you know that by proceeding for trial before the judge instead of by jury you give up the right to have the ultimate guilt or innocence determined by a jury of your peers. You understand that?"

THE DEFENDANT: "Yes."

THE COURT: "And you are doing this voluntarily?"

THE DEFENDANT: "Yes."

THE COURT: "Thank you."

in Malden on the ground that any joint criminal undertaking had been completed by that time (after the second fire at the defendant's house). As a consequence the defendant argues that Surrette's statements are inadmissible against her as a joint venturer. See *Commonwealth* v. *White,* 370 Mass. 703, 710 (1976). The judge could have found, however, that the rental and use of the Malden apartment was an integral and ongoing part of the joint scheme and that Surrette's statements were an attempt to conceal his and the defendant's connection with the apartment in an effort to avoid the inferences of guilt which would flow from that connection. It could also be inferred that the defendant acquiesced in Surrette's misstatement of her name. All of this demonstrates the existence of a continuing joint venture to cover up the crime, a fact which would render the declarations of one coventurer properly admissible against the other. *Commonwealth* v. *Simpson,* 370 Mass. 119, 122 (1976). *Commonwealth* v. *White, supra* at 709 n.8. Since the statements were made in this context, introduced through witnesses subject to cross-examination and admitted against the defendant by reason of the rule of evidence just referred to (and for the purpose of showing that they were made rather than that they were true), the defendant's further contention that the statements involve the sort of problem discussed in *Bruton* v. *United States,* 391 U.S. 123 (1968), fails. See *Dutton* v. *Evans,* 400 U.S. 74, 81-83, 86-88 (1970); *Commonwealth* v. *McLaughlin,* 364 Mass. 211, 220 (1973).

b. The defendant objected on hearsay grounds to the admission of a police report, prepared by Officer Dukeman of the Malden police department, concerning the Malden incident. The report refers to the occupants of the apartment as "Wesley Lanete and Dorothy Marrota" (apparently identifying another tenant as the source of this information). Since it is the fact of the statements of identity rather than their truthfulness which is in issue, the evidence is not vulnerable to attack on hearsay grounds. It may be admitted at retrial.

c. We believe that the statement of Carmine Fuccillo to Winchester police Officer McGee concerning the January 29 fire should be excluded if offered through Officer McGee or his written report at retrial. The evidence may be obtained by the direct testimony of Fuccillo.

d. The defendant asserts that on the sixth day of trial she discovered that the district attorney had ordered a daily transcript of the testimony without disclosing this fact to the judge or defense counsel. As a result, it appears that the record of testimony taken in the court's morning sessions was being transcribed and was physically unavailable during the afternoon sessions. The claim is that this arrangement hindered defense counsel's efforts to cross-examine witnesses about inconsistencies in their testimony.

General Laws c. 221, § 88, as appearing in St. 1978, c. 478, § 254, governs transcripts of reporter's notes and does not appear to require that notice be furnished either to the court or to opposing counsel when the Commonwealth or the defendant orders daily transcripts.[7] However, where daily transcripts require the removal of portions of the record of testimony from the courtroom while testimony is being taken, it is conceivable that the difficulties claimed by the defendant could occur, with possible prejudice to the conduct of cross-examination in general and impeachment in particular. We think the judge should be notified in advance of trial, or as soon as practicable, of either party's intention to order daily transcripts. Upon that notice, if problems similar to those alleged appear likely to arise, the judge may wish to direct counsel to reach agreement in advance as to when and what portions of the record may be sent out for transcription.

The judgment of conviction on the second count of indictment no. 78-2510 (of arson on January 29, 1978) is reversed, the finding thereon is set aside, and judgment on that count is to be entered for the defendant. The judgments of con-

---

[7] The Superior Court Regulations Governing Court Reporters (1973) also do not address the matter.

viction on the first count of that indictment and on both counts of indictment no. 78-2513 are reversed and the findings thereon are set aside. The defendant is to be retried on these three charges before a jury. See *Commonwealth* v. *Schofield, ante* at 206 n.7.

*So ordered.*

CUTTER, J. (dissenting). I dissent (on the issue of the adequacy of the colloquy on the waiver of jury trial) for substantially the reasons stated in my dissent in *Commonwealth* v. *Schofield, ante* at 206. Here the jury waiver colloquy by the trial judge was not as extended as in the *Schofield* case. It is an understatement to say that Mrs. DeStefano's defense trial counsel was no novice in criminal litigation. The trial judge (here also with an academic background) brought out that the defendant had been advised by her counsel. I see no reason for any second guessing by the trial judge about the trial tactics of proceeding without a jury, doubtless carefully considered by Mrs. DeStefano's experienced counsel and discussed fully with his client.