COMMONWEALTH *vs.* WILLIAM W. GALLAGHER.

Middlesex.    October 13, 1976. — November 29, 1976.

Present: HALE, C.J., GRANT, & BROWN, JJ.

*Assault,* Accessory, Sufficiency of evidence.  *Joint Enterprise.  Accessory.*

At the trial of a defendant for assault and battery with a dangerous weapon, evidence that the defendant drove with four companions to a gasoline station, that the five men left their car simultaneously, with one carrying a baseball bat and another a pipe or pool cue, and that while three of the men pursued the victim into the service bay area of the station the defendant stood in the doorway of the station was sufficient to warrant a finding that the defendant had engaged in a joint enterprise to assault the victim. [663-664]

INDICTMENT found and returned in the Superior Court on February 12, 1975.

The case was tried before *Adams*, J.

*Thomas Hoffman* for the defendant.

*James W. Sahakian*, Special Assistant District Attorney (*Peter W. Agnes, Jr.*, Assistant District Attorney, with him) for the Commonwealth.

HALE, C.J.    The defendant was indicted and tried together with three codefendants (D'Alessio[1], Mastaj, and Maley) for assault and battery with a dangerous weapon on one Elbery at a gas station in Newton. The defendant was convicted of assault. He brings this appeal under G. L. c. 278, §§ 33A-33G, claiming that the trial judge erred in denying his motion for a directed verdict, arguing that there was no evidence of his participation in a joint enterprise to commit the crime of assault.

The only question raised by a motion for a directed verdict is "whether there was sufficient evidence of the defendant's guilt to warrant the submission of the [case] ... to a jury," *Commonwealth* v. *Baron*, 356 Mass. 362, 365 (1969), *Commonwealth* v. *Mangula*, 2 Mass. App. Ct. 785, 786 (1975), and the appropriate standard of review on appeal is whether the evidence, read in its aspect most favorable to the Commonwealth, *Commonwealth* v. *Flynn*, 362 Mass. 455, 479 (1972), is such that the jury "might properly draw inferences, not too remote in the ordinary course of events, or forbidden by any rule of law, and conclude upon all the established circumstances and warranted inferences that the guilt of the defendant was proved beyond a reasonable doubt." *Commonwealth* v. *Vellucci*, 284 Mass. 443, 445 (1933). We conclude that the defendant's motion for a directed verdict was properly denied.

The standard for criminal liability under the joint enterprise theory is that "guilt of the accessory is established when it is ... shown that he intentionally assisted the principal in the commission of the crime and that he did this, sharing with the principal the mental state required for that crime." *Commonwealth* v. *Richards*, 363 Mass. 299, 307-308 (1973). The jury were warranted in finding on the basis of the Commonwealth's evidence that the defendant had engaged in a joint enterprise for the purpose of assaulting Elbery.

There was evidence at trial that the incident which gave

---

[1] See, *post,* 851 (1976).

rise to the indictment (and during which one Apodemi was shot and killed by Elbery) apparently happened as the result of two conversations between Elbery and D'Alessio on November 26, 1974, concerning some money that D'Alessio owed to Elbery. After the first conversation D'Alessio became "very upset"; during the second he and Elbery began arguing, and D'Alessio threatened to stab Elbery.

On the evening of November 29 about 8:00 P.M. one Coughlin, a friend of Elbery, met D'Alessio, Mastaj, and the defendant by chance in a parking lot outside a local restaurant a short distance from the gas station where Elbery was then working. There Coughlin had a short conversation with D'Alessio while the defendant and Mastaj went into the restaurant. D'Alessio then followed the two into the restaurant. After stopping briefly at the gas station, where he talked with Elbery, Coughlin went home, got his gun, and returned to the gas station at about 8:45 P.M. Approximately ten minutes later a car containing D'Alessio and four companions pulled up in front of the station. The five occupants got out of the car and came towards the front door of the station. One of the four, Apodemi, carried a baseball bat, and D'Alessio had an object that looked like a pipe or a pool cue.

Elbery's brother was standing in the office at the station with Elbery and Coughlin when the five arrived. D'Alessio and Apodemi were the first ones in, followed by Mastaj, Maley, and the defendant. The defendant stood in the area of the front door while D'Alessio, Apodemi, and Maley chased Elbery back into the service bay area of the station. Mastaj, armed with brass knuckles on his right hand, remained in the office, and the defendant stood at the doorway until the brief episode culminated with the shooting of Apodemi by Elbery. The police arrived at approximately 9:00 P.M.; by that time the defendant had left the scene.

There was also evidence that the defendant had associated with the codefendants on a regular basis prior to the evening of the assault; that one hour before the assault

took place he had been seen with two of them at a restaurant near the gas station; that when D'Alessio's car drew up at the station all four doors of the car opened simultaneously; that five men got out and walked toward the station office; that the defendant, although not specifically identified as one of the men in the car, was identified as one of the five men who approached the office; that a baseball bat had been passed from the rear to the front seat of the car; and that Apodemi had been seen carrying it into the station. From that evidence it was permissible for the jury to infer that the defendant had been in the car, that he had known of and acquiesced in the plan to assault Elbery, and that he had not only seen the baseball bat and the pipe or pool cue but had known of their intended use.

Further evidence showed that while three of the men pursued Elbery into the service bay area, Mastaj positioned himself in the office and the defendant stood in the doorway of the station. Although he was seen outside the station after the shooting, the defendant had left the scene before the police arrived. It was permissible for the jury to infer from these facts that Gallagher was present to render "aid and encouragement, as a lookout to give warning ... or as an ally in making escape or in meeting any eventuality." *Commonwealth* v. *Conroy*, 333 Mass. 751, 755 (1956). *Commonwealth* v. *Drew, ante,* 30, 31 (1976).

*Judgment affirmed.*