COMMONWEALTH vs. JAMES RONAYNE.

Hampden.    September 10, 1979. — October 9, 1979.

Present: HALE, C.J., ARMSTRONG, & GREANEY, JJ.

*Breaking and Entering. Possession of Burglarious Instruments. Practice, Criminal,* Directed verdict, Instructions to jury. *Evidence,* Cross-examination.

At the trial of a defendant charged with breaking and entering in the nighttime with intent to commit larceny and with possession of burglarious implements, there was sufficient evidence to warrant a finding that the defendant was not merely present at the scene but actively participated in the burglary as a member of a joint enterprise and that there was a common possession of and intent to use the burglarious implements. [423-426]

At a criminal trial, the defendant was not prejudiced by a question to a defense witness as to whether he was telling the story for the first time where an objection to the question was sustained before it was answered. [426-427]

At a criminal trial, the judge's supplemental instructions given in response to a question from the jury were correct in every essential respect. [427]

INDICTMENTS found and returned in the Superior Court on May 5, 1977.

The cases were tried before *Simons, J.*

*David A. Robinson* for the defendant.

*Dianne M. Dillon,* Assistant District Attorney (*Kevin M. Flynn* with her) for the Commonwealth, submitted a brief.

GREANEY, J. James Ronayne appeals from his convictions by a Superior Court jury on indictments charging him with breaking and entering in the nighttime with intent to commit larceny (G. L. c. 266, §§ 16 and 30) at the Springfield Street Railway Credit Union (Credit Union) and possession of burglarious implements (G. L. c. 266, § 49). We affirm the convictions.

Ronayne argues three assignments of error. Specifically, he claims that the judge erred in (1) refusing to direct verdicts of acquittal on both charges against him; (2) handling defense counsel's objection to a question posed by the prosecutor on cross-examination of a defense witness; and (3) answering a question propounded by the jury in the course of its deliberations.[1]

We first summarize the facts that could have been found by the jury at the close of the Commonwealth's case in order to set the stage for discussion of the propriety of the denial of the motions for directed verdicts.

At approximately 7:30 P.M. on January 13, 1977, Officers Hertz and Bryant of the Springfield police department were leaving Kip's Restaurant on Main Street in Springfield when they met and exchanged greetings with Ronayne and Edward Redmond. Officer Bryant had known both subjects — Ronayne for approximately ten years and Redmond since he was a youth. At that time, Officer Hertz observed Ronayne wearing a brown and tan striped jersey.

At approximately 9:00 P.M. on the same evening the two officers received a radio dispatch directing them to return to the vicinity of Kip's Restaurant. As the cruiser approached Kip's with its lights off and siren silent, Officer Hertz observed a bright light emanating from the doorway of the Credit Union adjacent to the restaurant.

---

[1] A fourth assignment of error, as to the judge's refusal to grant a mistrial during one phase of the trial, has not been briefed or argued and is deemed waived. Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). Rule 1:13 of the Appeals Court, as amended, 3 Mass. App. Ct. 801 (1975).

Both officers observed four people in the area of the alcove of the Credit Union. This alcove was approximately three feet deep. As the officers parked and alighted from the cruiser, the defendant Ronayne (still wearing a brown and tan striped shirt) and two other subjects left the alcove walking at a fast pace and entered Kip's. Redmond was then observed walking to his van, which was parked near the entrance to the Credit Union with its doors open. Redmond carried a tire iron in his hand which, upon his observation of the officers, he tossed into the van and uttered an expletive. Officer Hertz noticed fresh pry marks around the lock area of the door to the Credit Union. The door had been broken open and a deadbolt lock sealing it had been snapped. Upon entering the Credit Union, the officers observed its safe strapped to a dolly resting approximately six inches from the door. Officer Bryant matched the tire iron with the grooves of the pry marks in the door and noticed that the tire iron fit the grooves. There was evidence that the Credit Union was locked at approximately 7:30 that night, and that the safe weighing between 500 and 700 pounds had been moved twelve to fifteen feet from its usual location. The safe itself was valued at approximately $700 and contained approximately $250 in cash at the time.

1. *Directed verdicts.* Ronayne asserts that the judge should have granted his motions for directed verdicts of acquittal on both indictments. He maintains that, since it was not shown that he was in the Credit Union when the burglary occurred, but only at or near the alcove, the Commonwealth's evidence amounted to no more than proof of his presence at the scene and, as a result, was legally insufficient to warrant submission of the cases to the jury. In reviewing the denial of a motion for directed verdict, we consider only the evidence introduced up to the time the Commonwealth rested its case. *Commonwealth* v. *Clark*, 378 Mass. 392, 403-404 (1979). *Commonwealth* v. *Amazeen*, 375 Mass. 73, 80 (1978). *Commonwealth* v. *Kelley*, 370 Mass. 147, 150 (1976). To determine

whether there was sufficient evidence of the defendant's guilt to warrant the submission of the charges to the jury, the test is "whether the evidence, in its light most favorable to the Commonwealth, notwithstanding the contrary evidence presented by the defendant, is sufficient, as to each indictment, to permit the jury to infer the existence of the essential elements of the crime charged in that indictment." *Commonwealth* v. *Sandler*, 368 Mass. 729, 740 (1975). See, e.g., *Commonwealth* v. *Kelley, supra*; *Commonwealth* v. *Tabor*, 376 Mass. 811, 824 (1978); *Commonwealth* v. *Dunphy*, 377 Mass. 453, 455-456 (1979). Moreover, "the evidence and the inferences permitted to be drawn therefrom must be 'of sufficient force to bring minds of ordinary intelligence and sagacity to the persuasion of [guilt] beyond a reasonable doubt.' " *Commonwealth* v. *Latimore,* 378 Mass. 671, 677 (1979), quoting from *Commonwealth* v. *Cooper*, 264 Mass. 368, 373 (1928). See *Commonwealth* v. *Campbell*, 378 Mass. 680, 686 (1979); *Jackson* v. *Virginia*, 443 U.S. 307, 319 (1979) ("[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" [emphasis in original]). We also examine the defendant's argument in light of the theory underlying culpability for someone who participates in a joint criminal venture, that "one who aids, commands, counsels, or encourages commission of a crime while sharing with the principal the mental state required for the crime is guilty as a principal," *Commonwealth* v. *Soares*, 377 Mass. 461, 470 (1979); *Commonwealth* v. *Blow*, 370 Mass. 401, 407-408 (1976), and that the jury may infer the requisite mental state from the defendant's knowledge of the circumstances and subsequent participation in the offense. *Commonwealth* v. *Ferguson*, 365 Mass. 1, 7-10 (1974). See also *Commonwealth* v. *Albano*, 373 Mass. 132, 134 (1977) ("presence supplemented by other incriminating evidence, 'will serve to tip the scale in favor of sufficiency,' " quoting from *United*

*States* v. *Birmley*, 529 F.2d 103, 108 [6th Cir. 1976]). With regard to the burglary, the evidence at the close of the Commonwealth's case was convincing that the Credit Union had been burglarized by the forceful breaking of a locked door, and that a safe of considerable weight had been picked up, strapped to a dolly and transported twelve to fifteen feet from its original location to the door. The jury could have concluded that there was a common design involving the four people observed leaving the scene to steal the safe and its contents by loading it into the van with the intention to crack it and abandon it elsewhere. It was a common sense inference for the jury to draw that, since Ronayne was seen leaving the alcove with two others, he and the others, including Redmond, his companion for part of the evening, had been inside the Credit Union hoisting the safe. Also, the exit from the alcove by Redmond heading for the van to dispose of the tire iron, and observation of Ronayne with the two others moving at a fast pace into Kip's[2] warranted the conclusion that the burglars knew they had been discovered and, as a result, had divided in different directions to dispose of the burglar's tools and obtain a measure of cover. *Commonwealth* v. *Smith*, 1 Mass. App. Ct. 545, 547 (1973). *Commonwealth* v. *Gilday*, 367 Mass. 474, 496 (1975). *Commonwealth* v. *Sampson*, 7 Mass. App. Ct. 514, 518 (1979). There was ample evidence to warrant a finding that Ronayne either broke and entered the Credit Union with the others, confederating to assist in transporting the safe and in stealing its contents, or that he remained as a lookout to assist in the escape, and that throughout he shared with Redmond and the others the necessary intent to see the burglary and larceny accomplished. *Commonwealth* v. *Perry*, 357 Mass. 149 (1970), principally relied upon by Ronayne as indicating that the evidence only warranted a finding of presence, does not

_____

[2] The other two suspects were never identified after melting into the mists at Kip's.

control on these facts. In that case it was undisputed that the defendant Perry was at all times during the course of the robbery about 400 feet from the scene. Here Ronayne was squarely in the eye of the storm. *Commonwealth* v. *Murphy*, 1 Mass. App. Ct. 71 (1973), also is of no help to ·the defendant for the reasons discussed extensively in *Commonwealth* v. *Dupont*, 2 Mass. App. Ct. 566, 574-575 (1974). On the second indictment charging possession of burglarious tools, if the jury believed that the defendant actively participated in the burglary as a member of a joint enterprise, they could also have found that there was a common possession of and a common intent to use the tools. *Commonwealth* v. *Tilley*, 306 Mass. 412, 417-418 (1940). *Commonwealth* v. *Conroy*, 333 Mass. 751, 755 (1956).

2. *Evidentiary rulings.* At the trial a defense witness, Donald Bellevue, testified on direct examination that he had observed Ronayne in Kip's during the time that the burglary occurred. In cross-examination, the prosecutor asked Bellevue whether he was telling the story for the first time. An objection to the question was sustained before the question was answered. It is now argued that this scenario somehow violated the defendant's rights established in G. L. c. 278, § 23,[3] *Commonwealth* v. *Palmarin*, 378 Mass. 474, 476-478 (1979), in view of later testimony by the same witness that he was present when Ronayne was arrested, that he had seen Officer Bryant on approximately fifty occasions thereafter, and that he had not informed the officer that Ronayne was in the bar during the critical times of the burglary. Any prospect of harm to the defense was erased at the threshold by the

---

[3] This statute, as most recently amended by St. 1978, c. 478, § 305, provides: "At the trial of a criminal case in the superior court, upon indictment, or in a jury-of-six session in a district court, the fact that the defendant did not testify at any preliminary hearing in the first court, or that at such hearing he waived examination or did not offer any evidence in his own defense, shall not be used as evidence against him, nor be referred to or commented upon by the prosecuting officer."

judge's action in sustaining the objection to the challenged question.[4]

3. *Supplemental jury instructions.* In the course of deliberations, the jury posed the following question to the judge: "If Redmond is charged with having tools in his possession, is Ronayne automatically charged also?" The judge discussed the contents of the question and a proposed answer to it with all counsel. Defense counsel insisted that the jury mistakenly used the word "charged" instead of the word "convicted" in the question, and, on that assumption, maintained that the question should be answered simply "no." The judge disagreed, and answered the question by reinstructing the jury on the function of the grand jury, the fact that the assessment of that body in voting an indictment should not affect the trial jury's function, the Commonwealth's burden of establishing guilt beyond a reasonable doubt on each element of the charge of possession of burglarious implements, the elements of that crime, and all of the essential principles of culpability on that charge under a theory of joint venture. The defendant now contends that the instructions failed properly to answer the question, but in his brief fails to point out any specific area where error might lie. In keeping with the wide latitude accorded to trial judges in framing the precise language to be used in instructions (*Commonwealth* v. *Kelley*, 359 Mass. 77, 92 [1971]), which includes instructions given in response to a jury question, we conclude that the supplemental instructions given in this case were correct in every essential respect. They comprehensively informed the jury on all probable facets raised by the inquiry, and were free from the slightest spectre of error. *Commonwealth* v. *Smith*, 1 Mass. App. Ct. at 646, and cases cited.

*Judgments affirmed.*

---

[4] The propriety of the subsequent examination has not been argued as error and, in any event, was proper cross-examination not included within the prohibition of G. L. c. 278, § 23.