COMMONWEALTH vs. MARIANNE AMARAL.

Bristol.   October 16, 1981. — February 25, 1982.

Present: PERRETTA, ROSE, & DREBEN, JJ.

*Robbery.   Practice, Criminal*, Required finding.

Evidence at a criminal trial was sufficient for the jury to find that the
defendant had aided and abetted two others in the armed robbery of a
store, and thus was guilty as a principal, where it appeared that, for
several hours preceding the robbery, she was with the two men who
actually robbed the store; that she was present in an automobile,
parked several blocks from the store, to which one of the men was able
to flee after the robbery; and that she drove the automobile from the
area, in unquestioning response to her companion's statements, "Let's
get out of here," and, "Steve got shot.  The guy had a gun." [242-244]

INDICTMENT found and returned in the Superior Court
Department on December 5, 1980.

The case was tried before *Prince*, J.

*Margaret Van Deusen* for the defendant.

*Phillip L. Weiner*, Assistant District Attorney, for the
Commonwealth.

ROSE, J.   The defendant appeals from a conviction on an
indictment charging armed robbery while masked (G. L.
c. 265, § 17).   She assigns as error the denial of her motion
for a required finding of not guilty.[1]   We affirm the judg-
ment.

_____

[1] The defendant's motion for a required finding of not guilty on the
charge of larceny of a motor vehicle (G. L. c. 266, § 28) was allowed. The
Commonwealth entered a nolle prosequi on an indictment charging the
defendant with being an accessory after the fact to armed robbery while
masked.  The remaining indictment, conspiracy to commit armed rob-
bery, was not tried but was placed on file without a change of plea, with
the consent of the defendant.

Commonwealth *v.* Amaral.

In reviewing the denial of a motion for a required finding of not guilty in a criminal case, we consider whether the evidence, when viewed in the light most favorable to the Commonwealth (*Commonwealth* v. *Sandler*, 368 Mass. 729, 740 [1975]), and with permissible inferences therefrom, was sufficient with respect to each essential element of the offense to have "satisfied a rational trier of fact of each such element beyond a reasonable doubt." *Commonwealth* v. *Latimore*, 378 Mass. 671, 678 (1979). *Commonwealth* v. *Appleby*, 380 Mass. 296, 311 n.10 (1980). *Commonwealth* v. *Casale*, 381 Mass. 167, 168 (1980). *Commonwealth* v. *Kenneally*, 10 Mass. App. Ct. 162, 164 (1980). *Commonwealth* v. *Core*, 11 Mass. App. Ct. 919, 920 (1981). "[I]t is not enough for the appellate court to find that there was some record evidence, however slight, to support each essential element of the offense." *Commonwealth* v. *Latimore, supra* at 677. Inferences drawn from facts or circumstances need not be necessary, but only reasonable, possible, and not unwarranted because too remote. *Commonwealth* v. *Medeiros*, 354 Mass. 193, 197 (1968), and cases cited. *Commonwealth* v. *Young*, 382 Mass. 448, 464 (1981), quoting from *Commonwealth* v. *Best*, 381 Mass. 472, 483 (1980). *Commonwealth* v. *Walter*, 10 Mass. App. Ct. 255, 257 (1980), citing *Commonwealth* v. *Chinn*, 6 Mass. App. Ct. 714, 716 (1978). On these standards we summarize the evidence.

An employee of the Tip Top Variety Store on Rivet Street in New Bedford testified that about 7:30 P.M. on November 5, 1980, he observed two men outside the store. One man wore a tan jacket, a white and red striped hat "almost like a ski mask," and was "just hanging around, fooling around." His suspicions aroused, the employee called the police, but the men were no longer in the area when the officers arrived. After the police left, the two men were again observed to pass by the store. One of them looked directly in the door. The police were again notified.

The proprietor of Jimmy's Variety Store, located on Rivet Street two doors down from the Tip Top Variety Store, tes-

tified that at approximately 8:30 P.M. that same night two
men entered the store and demanded money from him. One
man wore a white ski mask, with a red stripe, and a blue
jacket. The other wore dark clothes and a blue ski mask.
This second man was later identified as Stephen Trezon. He
carried a .22 caliber revolver which he pointed at the pro-
prietor's face. After Trezon had picked up money from a
drawer of the cash register, the proprietor reached for his
own .38 caliber revolver and shot Trezon, fatally wounding
him. The other man, later identified as Radames Hernan-
dez, fled; he and the defendant were apprehended approxi-
mately four hours later as they sat together in Trezon's
parked car in front of a cafe.[2] The defendant was then sit-
ting in the driver's seat. On the floor of the passenger side
was a bag containing a tweed hat, a wallet containing
Trezon's identification, a notebook, a set of keys, an elec-
tronic beeper, some change, and personal papers.

The defendant did not testify at her trial. Police officers
testified that she went willingly with them to the police sta-
tion, although she was not placed under arrest at that time.
At the station she was advised of her rights and signed a
waiver form. Her answers to police questions were written
down by an officer. She stated that she had been with Tre-
zon and Hernandez during the late afternoon of November 5,
that they first stopped at the residence of Trezon's estranged
wife (the defendant's sister) in Fairhaven, returned Trezon's
mother's car to Mattapoisett, and picked up Trezon's car
(the stolen Mustang described in note 2, *supra*). With Tre-
zon at the wheel, Hernandez in the passenger seat, and
Amaral in the back seat, the three drove to New Bedford
where they dropped off Trezon's two children, and then
drove around the South End of New Bedford for about an
hour, circling the block in the area of Rivet and County
Streets, where a complex of stores was located, "a couple of
times." The car was then parked several blocks away, and

---

[2] The car, a 1977 Mustang Hatchback, had been stolen over three
months previously.

Trezon and Hernandez alighted, leaving the defendant in the car. A few minutes later, Hernandez ran back to the car and said to the defendant, "Let's get out of here. Steve got shot. The guy had a gun." The defendant then drove the car to her sister's residence in Fairhaven, staying there about twenty minutes. Hernandez changed his jacket en route. From Fairhaven the pair returned to New Bedford, eventually going to Rebello's Cafe; they were apprehended outside the cafe at approximately 12:30 A.M. Under further police questioning, Amaral said that she had not overheard any conversation between Trezon and Hernandez about attempting to rob Jimmy's Variety Store, nor had she seen any items such as a stocking mask or a firearm.

It is settled that mere association with the perpetrators of a crime, before and after its commission, will not establish a defendant's guilt as a principal. *Commonwealth* v. *Perry*, 357 Mass. 149, 151 (1970). "A contrary holding would be tantamount to introducing into our law a doctrine of guilt by association, a policy which we decline to adopt." *Commonwealth* v. *Fancy*, 349 Mass. 196, 200 (1965). *Commonwealth* v. *Chinn*, 6 Mass. App. Ct. at 717. Nor will "mere presence at the commission of the wrongful act and even failure to take affirmative steps to prevent it . . . render a person liable as a participant." *Commonwealth* v. *Benders*, 361 Mass. 704, 708 (1972). *Commonwealth* v. *Michel*, 367 Mass. 454, 457 (1975). *Commonwealth* v. *Flowers*, 1 Mass. App. Ct. 415, 419 (1973). Presence together with knowledge of the planned act is insufficient by itself to warrant conviction of a person for the wrongful acts of another. *Commonwealth* v. *Casale*, 381 Mass. at 173, citing *Commonwealth* v. *Soares*, 377 Mass. 461, 471 (1979). Mere knowledge that a crime is planned, "even when coupled with subsequent concealment of the completed crime, does not make one guilty . . . as a principal to the crime about which he has knowledge." *Commonwealth* v. *Perry, supra* at 151. *Commonwealth* v. *Murphy*, 1 Mass. App. Ct. 71, 77 (1973).

To sustain a conviction on the theory of joint enterprise, the defendant must be shown to have shared the mental state re-

quired for the crime, and to have assisted the principal intentionally in its commission. *Commonwealth* v. *Richards*, 363 Mass. 299, 307-308 (1973), and authorities cited. *Commonwealth* v. *Funches*, 379 Mass. 283, 295 (1979). *Commonwealth* v. *Gallagher*, 4 Mass. App. Ct. 661, 662 (1976). *Commonwealth* v. *Chinn, supra* at 716. There must be proof that the defendant somehow participated in committing the offense, by counseling, hiring or otherwise procuring the principal, by agreeing to stand by, at, or near the scene to render aid, assistance or encouragement if it became necessary, or to assist the perpetrator in making an escape from the scene. *Commonwealth* v. *Perry*, 357 Mass. at 151. *Commonwealth* v. *Chinn, supra* at 716. Thus, while the Commonwealth need not show that the defendant "participate[d] in the actual perpetration of the crime," *Commonwealth* v. *Soares, supra* at 472, it must show that the defendant somehow participated in the venture to the extent that she sought to make it succeed. *Commonwealth* v. *Benders, supra* at 707-708. *Commonwealth* v. *Chinn, supra* at 716.

Because the Commonwealth neither showed nor contended that the defendant was an active perpetrator of the robbery, her conviction must stand, if at all, on the premise that she aided and abetted Trezon and Hernandez. Presence is equated with aiding and abetting when it is shown that it purposely encourages or emboldens the principal to perpetrate the unlawful deed. *Commonwealth* v. *Knapp*, 9 Pick. 496, 517-518 (1830). *Commonwealth* v. *Soares, supra* at 471-472. See also *Commonwealth* v. *Morrow*, 363 Mass. 601, 608-609 (1973); *Commonwealth* v. *Cook*, 10 Mass. App. Ct. 670 n.2 (1980) ("As the *Morrow* decision points out, the terms accomplice, principal [in the second degree] and accessory are virtually synonymous when the facts involve presence at the scene and ability to aid the perpetrator"). Hence, the question in this case is whether the evidence was sufficient for the jury to determine that the defendant participated in a masked and armed robbery.

By the defendant's own statements, which the jury was free to accept or reject in whole or in part, she was with Trezon and Hernandez from late afternoon on. During this time, the three were at the home of Trezon's estranged wife, they had Trezon's children in the car for a period, they changed cars, and they left the children with a friend. Either at the outset or at some point during these activities, which entailed getting in and out of the car, Trezon and Hernandez had or acquired ski masks and at least one extra jacket, which Hernandez changed into while fleeing the scene of the robbery as the defendant drove. The defendant described how they had passed the stores on Rivet Street, circling the block a "couple" of times, and then parked the car "several" blocks away. The Commonwealth argues that the car was deliberately parked a few blocks away so that its identification could be avoided while Trezon and Hernandez studied the area for a victim, and yet it could remain close enough to facilitate an escape.

Viewing the evidence in its aspect most favorable to the Commonwealth, along with the inferences which may be drawn so long as they are not "unwarranted because too remote, according to the ordinary course of events," *Commonwealth* v. *Bonomi*, 335 Mass. 327, 356 (1957); *Commonwealth* v. *Drew*, 4 Mass. App. Ct. 30, 32 (1976), we conclude that the prosecution met its burden of showing that the defendant had knowledge of and participated in the robbery with Trezon and Hernandez. It could be inferred from the evidence that the crime was hardly "spontaneous" but was instead marked "by some degree of planning, preparation and purpose." *Id.* at 32. Moreover, it could be inferred from these activities and the defendant's presence throughout that she not only had knowledge of the robbery but that she also knew Trezon and Hernandez possessed masks and a weapon. Compare *Commonwealth* v. *Mangula*, 2 Mass. App. Ct. 785, 790 (1975). The defendant argues that her position in the car was too remote from the store to permit an inference that she was capable of aiding and ready to aid her companions. We decline to rule that a

distance described only as "several blocks" is, as matter of law, so far removed from the scene of the actual crime as to preclude an inference that the defendant participated in the crime of which she inferentially had knowledge. By the defendant's version of the events, Trezon and Hernandez were gone only a few minutes before Hernandez returned to the car and said, "Let's get out of here," and announced, "Steve got shot. The guy had a gun," and she then drove off.

We conclude that the defendant's associative acts of the afternoon and evening, her presence in the car to which Hernandez was able to run after the robbery, and the flight from the area, in unquestioning response to Hernandez' statement, in a car driven by her, are sufficient facts from which the jury could infer her guilt beyond a reasonable doubt.

*Judgment affirmed.*