COMMONWEALTH vs. EDWIN SAEZ.

Worcester. October 7, 1985. — January 13, 1986.

Present: GRANT, CUTTER, & SMITH, JJ.

*Controlled Substances. Joint Enterprise.*

At the trial of an indictment charging possession of heroin with intent to distribute, evidence that the defendant looked up and down the street once while what appeared to be a drug transaction was taking place between the defendant's companion and a man who had arrived in an automobile, and that some time later, after the defendant and his companion had left an apartment building, the defendant went to the street and looked up and down once while his companion went to the rear of the building and concealed a white bundle later discovered to contain packets of heroin, was insufficient, without more, to warrant the defendant's conviction on a joint enterprise theory. [411-413] CUTTER, J., dissenting.

INDICTMENT found and returned in the Superior Court Department on March 7, 1984.

The case was tried before *James, P. Donohue*, J.

*Patricia A. O'Neill*, Committee for Public Counsel Services, for the defendant.

*Claudia R. Sullivan*, Assistant District Attorney, for the Commonwealth.

SMITH, J. The defendant was indicted for the crime of unlawful possession of heroin with intent to distribute. At the conclusion of the Commonwealth's evidence, the defendant filed a motion for a required finding of not guilty. The motion was denied, and it is the defendant's sole contention on appeal that the judge's action in denying the motion constituted error.

We recite the facts that could have been found by the jury. On October 28, 1983, three police officers were conducting a narcotics surveillance on King Street in Worcester. The defendant was observed standing in front of 20 King Street. At approximately 8:00 A.M. the defendant was approached by one Gonzales, who

was known to the police.[1] The two men engaged in conversation in front of the building. About 8:15 A.M., another man arrived in an automobile. He got out of the automobile and approached the pair and engaged Gonzales in conversation. Gonzales gave the man a small red packet in exchange for some money. While this transaction was taking place, the defendant, who was standing within an arm's length of Gonzales, looked up and down the street. The transaction did not take longer than a minute.

After the man left in his automobile, the defendant and Gonzales talked outside 20 King Street for a few minutes. They then walked up King Street onto King Terrace, where they entered a three-decker apartment building through the rear entrance. After spending a short time in a second floor apartment, they left the building by the same door, walked to the front of the building, and departed in a taxi.

At about 9:15 A.M., a man and a woman arrived at the King Terrace address by automobile. The woman was known to the police, the man unknown. They left the automobile and entered the same second floor apartment which the defendant and Gonzales had previously entered. Shortly afterward, the defendant and Gonzales returned and reentered the apartment. Approximately a minute later the man and woman left the apartment, got into their car, and drove away.

A few minutes after the man and woman had departed, the defendant and Gonzales left the apartment and came downstairs to the yard. They separated, and the defendant walked up to King Street. He went to the front of the apartment building and looked up and down the street. Gonzales went to the rear of the apartment building and concealed a white bundle in the grass near a dumpster. The bundle was retrieved by the police. It turned out to be tissue paper wrapped around two silver foil packets. Each packet contained nine smaller red packets of white powder. The white powder was heroin.

In reviewing the denial of a motion for a required finding of not guilty, we view the evidence in the light most favorable to the Commonwealth in order to determine whether that evi-

---

[1] Gonzales was not tried with the defendant. Apparently he had been sentenced at an earlier date.

dence was sufficient to satisfy a rational trier of fact of each element of the crime beyond a reasonable doubt. See *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979); *Commonwealth* v. *Pope*, 15 Mass. App. Ct. 505, 508 (1983). Inferences drawn from the evidence may also be considered, provided that they "are not too remote according to the usual course of events." *Commonwealth* v. *Latimore, supra* at 676. "The inferences . . . need not be necessary or inescapable, as long as they are reasonable, possible, and not unwarranted" because too remote. *Commonwealth* v. *Chinn,* 6 Mass. App. Ct. 714, 716 (1978). *Commonwealth* v. *Walter,* 10 Mass. App. Ct. 255, 257 (1980).

It was the Commonwealth's theory at trial that the defendant and Gonzales were engaged in a joint enterprise on the morning of October 28, 1983. In order "[t]o sustain a conviction on the theory of joint enterprise, the defendant must be shown to have shared the mental state required for the crime, and to have assisted the principal intentionally in its commission." *Commonwealth* v. *Amaral,* 13 Mass. App. Ct. 238, 241-242 (1982). Also see *Commonwealth* v. *Soares,* 377 Mass. 461, 470 (1979); *Commonwealth* v. *Griffin,* 19 Mass. App. Ct. 174, 178 (1985). Mere presence at the scene of the crime and the "failure to take affirmative steps to prevent it do not render a person liable as a participant." *Commonwealth* v. *Benders,* 361 Mass. 704, 708 (1972). *Commonwealth* v. *Pope, supra* at 509. *Commonwealth* v. *Griffin, supra* at 178. Evidence that an accused associated with persons who committed the crime does not "justify an inference that [he also] participated in [its] commission." *Commonwealth* v. *Chinn, supra* at 717. In order to sustain a conviction, "[t]here must be proof that the defendant somehow participated in committing the offense, by counseling, hiring or otherwise procuring the principal, by agreeing to stand by, at, or near the scene to render aid, assistance or encouragement if it became necessary, or to assist the perpetrator in making an escape from the scene." *Commonwealth* v. *Amaral, supra* at 242. See *Commonwealth* v. *Conroy,* 333 Mass. 751, 755 (1956). The Commonwealth contends that the

defendant participated in the crime as a joint venturer by acting as a lookout while Gonzales had heroin in his possession with the intent to distribute. The defendant argues, however, that his actions did not rise to the level of participation required of a joint venturer and also that the evidence did not show that he had any possessory interest in the heroin.

It is clear that a person who acts as a lookout while others are engaged in a criminal enterprise can be convicted on a joint enterprise theory. *Commonwealth* v. *Conroy, supra* at 755. *Commonwealth* v. *Pope, supra* at 509-511. A reading of the "lookout" cases discloses that in order for the Commonwealth to withstand a motion for a required finding of not guilty, it cannot rely on evidence that merely places the defendant at the scene of the crime and shows him to be in association with the principals. Rather, the Commonwealth must present additional evidence which implicates the defendant in the crime. See *Commonwealth* v. *Conroy, supra* (defendant gave false statements to police); *Commonwealth* v. *Drew,* 4 Mass. App. Ct. 30, 31 (1976) (defendant had knowledge that robberies were to be committed); *Commonwealth* v. *Gallagher,* 4 Mass. App. Ct. 661, 663-664 (1976) (same); *Commonwealth* v. *Amaral, supra* at 243-244 (defendant fled from scene after crime committed); *Commonwealth* v. *Pope, supra* (defendant gave false name to police). Contrast *Commonwealth* v. *Murphy,* 1 Mass. App. Ct. 71, 76-77 (1973) (no evidence offered except that defendant was present at crime scene with principal).

As the basis for its contention that the defendant was part of a joint enterprise, the Commonwealth relies on the evidence showing that the defendant looked up and down King Street on two separate occasions. The Commonwealth claims that the jury could infer from those two physical acts that it was the defendant's job to act as lookout for Gonzales. The problem, however, with the Commonwealth's argument is that the evidence presented was "notable for its lack of detail" (*Commonwealth* v. *Deagle,* 10 Mass. App. Ct. 563, 565 [1980]). That lack is a serious weakness in a case such as this one, where the Commonwealth attempts to prove the defendant's guilt by

evidence of commonplace actions of looking up and down a street, which, alone, are ambiguous and inconclusive in nature.

The evidence indicates that the defendant looked up and down the street on two occasions. The defendant first looked up and down the street during Gonzales' transaction with the man who arrived on the scene in an automobile.[2] The Commonwealth argues that it was the defendant's role to be on the lookout for the police. But there was no evidence presented that showed that the defendant looked up and down the street any more than once during the minute-long transaction. The defendant's conduct equally suggests nothing more than that he probably realized that he was a witness to a crime.[3]

The evidence shows that the defendant later looked up and down the street for a second time after he and Gonzales left the three-decker building and separated. This occurred when the defendant went to the front of the building while Gonzales went to the back yard and concealed the bundle containing heroin. Again, the evidence, or lack of it, indicated that the defendant looked up and down the street only once, hardly the conduct of a person whose role was to be on the lookout for the police. There was no evidence of any communication between the defendant and Gonzales after they separated and no evidence that Gonzales rejoined the defendant after he had hidden the bundle.[4]

---

[2] The Commonwealth did not present any evidence that the red packet that Gonzales gave to the person in exchange for money resembled the red packets of heroin found in the yard.

[3] The defendant might have been charged with a violation of G. L. c. 94C, § 35, as amended by St. 1972, c. 806, § 25. That statute makes it a crime for any person knowingly to be present where heroin is kept or to be in the company of a person, knowing that that person is in possession of heroin. The fact that the defendant might have been so charged or might have been found guilty of a violation of the statute does not by itself mean that he was a joint venturer in the crime of unlawful possession of heroin with intent to sell. We note that G. L. c. 94C, § 35, is not a lesser included offense of the charged crime. G. L. c. 94C, § 32. See *Commonwealth* v. *Rodriguez*, 11 Mass. App. Ct. 379 (1981). Therefore, the Commonwealth could still charge the defendant with a violation of § 35.

[4] It may be that the defendant and Gonzales were arrested immediately after Gonzales hid the bundle. The Commonwealth, however, did not present any evidence which showed when they were arrested.

In sum, the evidence shows that the defendant associated himself with an individual whom the defendant may have known to be in possession of heroin. In addition, there was evidence that the defendant, on two occasions, looked up and down the street once. The issue is a close one, but because of the failure of the Commonwealth to develop facts more adequately, we conclude that too much is left to conjecture or surmise. *Berry* v. *Commonwealth,* 393 Mass. 793, 795-796 (1985).

Because of our decision, there is no need for us to consider the defendant's contention that the Commonwealth did not show that the defendant had a possessory interest in the heroin.

The judgment is reversed, and the verdict is set aside. Judgment is to be entered for the defendant.

*So ordered.*

CUTTER, J. (dissenting). I would affirm. From the aggregate evidence concerning the defendant's observed activities, I think an inference reasonably may be drawn that he was encouraging and participating in the heroin distribution enterprise.