COMMONWEALTH *vs.* ULYSSES PRINGLE, JR.

Middlesex.  May 22, 1986. — October 7, 1986.

Present: SMITH, WARNER, & FINE, JJ.

*Practice, Criminal,* Required finding, Instructions to jury. *Breaking and Entering. Possession of Burglarious Instruments. Joint Enterprise. Evidence,* Consciousness of guilt.

At the trial of indictments charging possession of burglarious tools and attempting to break into a cash register in a Dunkin' Donuts coffee shop, the jury were warranted in finding the defendant guilty on a joint enterprise theory, where there was evidence that the defendant was standing near a companion who seemed to be trying to open the cash register with an object having a long black handle; that the defendant attracted his companion's attention to a waitress who was watching them; and that, after police stopped the defendant and his companion as they were driving away in an automobile, the officers found a knife with a long black handle on the floor of the car and a large black afro comb in the companion's back pocket. [748-751] FINE, J., dissenting.

At the trial of indictments for attempting to break into a depository and for possession of burglarious tools, at which there was evidence that, when the defendant and a companion were arrested, the defendant gave his correct name to police while his companion gave a false one, the judge erred in instructing the jury that the companion's use of a false name could be considered by them as evidence of the defendant's own consciousness of guilt if they should find the existence of joint enterprise at the time the false statements were made. [751-753]

COMPLAINT received and sworn to in the Cambridge Division of the District Court Department on August 17, 1984.

The case was tried in the jury session of that court before *Ronald D. D'Avolio, J.*

*William R. Hill, Jr.,* Committee for Public Counsel Services, for the defendant.

*Michael Fabbri,* Assistant District Attorney, for the Commonwealth.

SMITH, J. The defendant and another, Raymond Gaines, were charged with attempting to break into a depository (a Dunkin' Donuts cash register) and possession of burglarious tools. A jury of six in the District Court found them guilty on both charges. This appeal concerns only those issues raised by Pringle. He claims that the judge erred in denying his motions for required findings of not guilty and in his instructions to the jury.

We recite the facts that could have been found by the jury. At 8:30 A.M., on August 17, 1984, Gaines and the defendant were in a Dunkin' Donuts store in Cambridge. They stood together, talking, on the customer side of a glass counter in the take-out area. They were standing less than a foot away from a cash register, which was sitting on top of the counter. A waitress asked them if she could be of assistance. They declined her offer and continued to stand in front of the cash register. The waitress proceeded to serve customers at the eat-in counter, some six feet away from the two men. After a short while, the waitress noticed Gaines reach down and touch his sock just above his ankle. Shortly thereafter, the waitress saw Gaines push an object with a long black handle underneath the cash register. The register, which contained money, had a lever located on its bottom near the front which, if pushed, would open the cash drawer.[1] Gaines manipulated the object back and forth under the register. The waitress then observed the defendant (who was standing directly behind Gaines) say something to his companion. Gaines then looked at the waitress, who immediately walked to the back of the store to tell

---

[1] The following testimony about the lever underneath the cash register was given by the waitress on direct examination:

Q. "How does one open that cash register?"
A. "If you're ringing in a sale and press the cash key, or there's a lever underneath to open it in case of power failure."
Q. "When you say underneath, where underneath?"
A. "Towards the front of the register under the bottom."

The fact that the waitress had never seen the lever goes to the weight of her evidence, not its sufficiency, which is the issue under review here.

someone to call the police. When she returned to the front, the two men were leaving the store. She followed them out and noted the license number of their car; she then called the police. Approximately five minutes had elapsed from the time she had first observed the two men at the cash register.

Shortly after hearing a radioed description of the car and the two men, a police officer spotted them in a mall parking lot directly across the street from the Dunkin' Donuts. The defendant and Gaines got out of the car and walked towards the mall shops. The officer saw the two men reverse direction and return to their car when they appeared to notice him drive by. After the two men were stopped by the officer, they were identified by the waitress as the two who had aroused her suspicions a short time before. The police retrieved a knife with a long black handle from the floor beneath the dashboard of the car and a large black afro comb from Gaines' back pocket. Both of these items were introduced in evidence at the trial.

1. *Denial of required findings of not guilty.* The defendant claims that the judge erred in denying his motions for required findings of not guilty. Our standard of review of a denial of a motion for a required finding of not guilty is "whether the evidence received, viewed in a light most favorable to the Commonwealth, is sufficient so that the jury 'might properly draw inferences, not too remote in the ordinary course of events, or forbidden by any rule of law, and conclude upon all the established circumstances and warranted inferences that the guilt of the defendant was proved beyond a reasonable doubt.'" *Commonwealth* v. *Clary,* 388 Mass. 583, 588 (1983), quoting from *Commonwealth* v. *Vellucci,* 284 Mass. 443, 445 (1933). "The inferences cannot be too remote but 'allowable inferences need not be necessary or inescapable.'" *Commonwealth* v. *Lanoue,* 392 Mass. 583, 589-590 (1984), quoting from *Commonwealth* v. *Rojas,* 388 Mass. 626, 630 (1983).

The Commonwealth's theory at trial was that the defendant and Gaines were engaged in a joint enterprise to break into

the cash register on the morning of August 17, 1984.[2] In order "[t]o sustain a conviction on the theory of joint enterprise, the defendant must be shown to have shared the mental state required for the crime, and to have assisted the principal intentionally in its commission." *Commonwealth* v. *Amaral,* 13 Mass. App. Ct. 238, 241-242 (1982). See also *Commonwealth* v. *Soares,* 377 Mass. 461, 470 (1979); *Commonwealth* v. *Griffin,* 19 Mass. App. Ct. 174, 178 (1985). Mere presence at the scene of the crime and the "failure to take affirmative steps to prevent it do not render a person liable as a participant." *Commonwealth* v. *Benders,* 361 Mass. 704, 708 (1972). *Commonwealth* v. *Pope,* 15 Mass. App. Ct. 505, 509 (1983). *Commonwealth* v. *Griffin, supra* at 178. Evidence that an accused is associated with persons who committed the crime does not "justify an inference that [he also] participated in [its] commission." *Commonwealth* v. *Chinn,* 6 Mass. App. Ct. 714, 717 (1978). In order to sustain a conviction, "[t]here must be proof that the defendant somehow participated in committing the offense, by counseling, hiring or otherwise procuring the principal, by agreeing to stand by, at, or near the scene to render aid, assistance or encouragement if it became necessary, or to assist the perpetrator in making an escape from the scene." *Commonwealth* v. *Amaral, supra* at 242. See *Commonwealth* v. *Conroy,* 333 Mass. 751, 755 (1956). The Commonwealth contends that the defendant participated in the crime as a joint venturer by acting as a lookout while Gaines attempted to break into the cash register. The defendant contends, however, that his actions did not rise to that level of participation required of a joint venturer.

There is no question that a person who acts as a lookout while others are engaged in a criminal enterprise can be con-

[2] The evidence was sufficient to persuade the jury beyond a reasonable doubt that Gaines had attempted to break into the cash register. Gaines was standing at the counter directly in front of the register. He had refused service. He was observed touching his sock at his ankle and then sliding an object with a long black handle back and forth under the register. From these facts the jury could reasonably have found that Gaines reached to his ankle for the knife and tried to open the cash drawer by tripping the lever.

victed on a joint enterprise theory. *Commonwealth* v. *Saez,* 21 Mass. App. Ct. 408, 411 (1986), and cases cited. However, in order to prevail on a motion for a required finding of not guilty, the Commonwealth "cannot rely on evidence that merely places the defendant at the scene of the crime and shows him to be in association with the principals. Rather, the Commonwealth must present additional evidence which implicates the defendant in the crime." *Ibid.* The recited facts presented the judge with a close call but his denials of the motions were not error.

In *Commonwealth* v. *Saez, supra,* we held that the action of the defendant looking up and down the street on two occasions did not, without more, rise to the level of "agreeing to stand by, at, or near the scene to render aid, assistance or encouragement." *Id.* at 410, quoting from *Commonwealth* v. *Amaral,* 13 Mass. App. Ct. at 242. The defendant's actions here are less ambiguous. He was first observed standing with Gaines in front of the counter, a short distance from the cash register. Both men declined service and continued to stand in front of the register for several minutes. They were observed conversing while standing there. The defendant stood with Gaines while the latter slid an object with a long black handle, back and forth, under the cash register. The waitress then observed the defendant speak to Gaines. His comment to Gaines drew the latter's attention to the waitress, not to the defendant. Gaines stopped his activity, and the two men immediately left the store. The jury could draw the inference from Gaines' conduct that the defendant's comment to him was a warning that Gaines was being observed by the waitress. The jury could find that the defendant's conduct bespoke an effort to be of aid and assistance to Gaines while he attempted to open the cash drawer by pushing the lever underneath the register.

The judge also correctly denied the defendant's motion for a required finding of not guilty on the complaint charging possession of burglarious instruments. Once the jury believed that the defendant actively participated in the attempt to break into the cash register, "they could also have found that there was a common possession of and a common intent to use the

tools." *Commonwealth* v. *Ronayne,* 8 Mass. App. Ct. 421, 426 (1979).[3]

2. *Instruction as to consciousness of guilt.* There was evidence that when the two men were stopped by the police officers after they had left the doughnut store, they were asked for their names. The defendant gave his correct name; Gaines gave a false one. After he was arrested, Gaines again gave a false name to the police. At the time the evidence was given, the defendant did not object to its admission against him or request a limiting instruction.

In the course of his instructions to the jury, the judge stated that if they found that Gaines gave a false name to the police, they could consider it as showing consciousness of guilt on his part. He further charged the jury that Gaines' use of a false name could also be considered by them as evidence of the defendant's own consciousness of guilt, if they should find the existence of a joint enterprise at the time the false statements were made. The defendant objected to this instruction and claimed error.[4]

The instruction, at least as it pertained to the defendant, should not have been given. "Any conduct of a party inconsistent with a belief in the righteousness of his cause is admissible as an admission that his cause is weak." Liacos, Massachusetts Evidence 281 (1981). The giving of a false name to the police by a defendant may give rise to an implied admission of consciousness of guilt. *Commonwealth* v. *Fancy,* 349 Mass. 196, 201 (1965). See also *Commonwealth* v. *Watson,* 377 Mass.

---

[3] The jury, after viewing the knife and comb, could reasonably have inferred from the waitress's description of the gap between the glass counter and the bottom of the cash register that only the knife could fit in that space. The evidence provided a sufficient basis for the jury to find that Gaines possessed the knife during the incident. The jury could also infer that the knife was a burglarious tool from the manner in which it was employed. *Commonwealth* v. *Jones,* 355 Mass. 170, 176-177 (1969).

[4] The defendant also claims that the instruction violated the court's holding in *Commonwealth* v. *Toney,* 385 Mass. 575, 585 n.6 (1982), and *Commonwealth* v. *Matos,* 394 Mass. 563, 566 (1985). We do not consider that contention of the defendant because we find that the instruction was erroneous on other grounds.

814, 831 (1979). Here, Gaines gave the false name to the police. The defendant, on the other hand, gave his correct name. Therefore, it was only the conduct of Gaines, not that of the defendant, from which consciousness of guilt could be implied.

The Commonwealth contends that the instruction was correct because the jury could find that Gaines and the defendant were engaged in a joint venture to cover up the crime at the time that Gaines made the false statements. However, any joint venture to cover up the crime by giving false names ended when the defendant gave his correct name. In addition, there was no evidence that the defendant knew Gaines' correct name or otherwise acquiesced in Gaines' false statements. Contrast *Commonwealth* v. *DeStefano,* 16 Mass. App. Ct. 208, 220 (1983). The situation in the instant case is similar to that which confronts a judge when a defendant flees during the course of his trial, leaving behind other defendants. There the judge may instruct the jury that it may consider the fleeing defendant's conduct as an implied admission of consciousness of guilt as to him but that no such admission may be drawn against those defendants who remained. *Commonwealth* v. *Clark,* 5 Mass. App. Ct. 673, 677 n.5 (1977). We see nothing in this record that would permit the jury to impute Gaines' conduct to the defendant. The instruction as it pertained to the defendant was error.

We cannot say the error was harmless.[5] Although the case against the defendant was sufficient, it was not overwhelming. The erroneous instruction could very well have tipped the balance. We conclude that, although the judge properly denied the defendant's motions for required findings of not guilty, his

---

[5] The judge instructed the jury that they could not consider the use of Gaines' false name against the defendant unless they first found *beyond a reasonable doubt* that a joint venture existed. The Commonwealth argues that the emphasized language was overly favorable to the defendant and made the erroneous instruction harmless. We disagree. The instruction should not have been given in the first place, and in the circumstances of this case the favorable language did not remove the harm.

instructions on consciousness of guilt in regard to the defendant were prejudicial error and a new trial is required.

The judgments are reversed, the verdicts set aside, and the case remanded for a new trial.

*So ordered.*

FINE, J. (dissenting in part). I would reverse the defendant's convictions on the ground that his motions for required findings of not guilty should have been allowed. The waitress may have had some cause to become suspicious of the pair in the doughnut shop, but her observations were not sufficient to justify a leap to the conclusion that a crime was being committed, at least not one in which the defendant was a participant. His conduct in the crowded doughnut shop was at least as consistent with an intention on his part to do no more than purchase doughnuts as it was with an intention to invade the cash register. A box of doughnuts *was* found in the car. The waitress admitted that she had never seen the lever. She was told where it was. It may be assumed, therefore, that she didn't know how it worked, and no other evidence was offered to fill this gap. The black object Gaines was holding as he bent down could have been a knife, but it was equally likely that it was the comb found in his pocket when he was arrested.

Although in my view it is not necessary for the court to reach the issue discussed in part 2 of the opinion, I do not disagree with the majority's reasoning.