COMMONWEALTH vs. ELIZABETH MAHONEY.

Middlesex. April 4, 1989. — July 6, 1989.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Joint Enterprise. Evidence*, Consciousness of guilt, Prior conviction.

Sufficient evidence was presented to a jury at a criminal trial to warrant
    their finding beyond a reasonable doubt that the defendant was a joint
    venturer and an active participant in the breaking and entering of a
    building and the breaking and entering of a safe or depository of money.
    [329]
The judge at the trial of indictments for breaking and entering did not abuse
    his discretion in denying the defendant's motion in limine to bar the use
    for impeachment purposes of her prior convictions of armed robbery,
    kidnapping and assault by means of a dangerous weapon. [330]
At a criminal trial the judge's instruction to the jury on consciousness of
    guilt, viewed in the context of the charge as a whole, contained no error.
    [330-331]

INDICTMENTS found and returned in the Superior Court De-
partment on October 29, 1986.

The cases were tried before *James D. McDaniel, Jr.,* J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*John R. Campbell* for the defendant.

*Anne Christman,* Assistant District Attorney, for the Com-
monwealth.

WILKINS, J. A jury found the defendant guilty, on a theory
of joint venture, of (a) breaking and entering a building in the
nighttime with intent to commit a felony and (b) breaking and
entering a safe or depository of money with intent to commit
a felony.

The evidence presents the question whether, viewed in the
light most favorable to the Commonwealth, a reasonable juror
would be warranted in concluding that each element of the
crimes charged has been proved beyond a reasonable doubt.
*Commonwealth* v. *Latimore,* 378 Mass. 671, 676-678 (1979).

There is little doubt that on September 21, 1986, the defendant's husband and another man broke into the Great Road Pharmacy on Route 2A in Acton and themselves committed the crimes charged.

The question as to the defendant's involvement as a joint venturer is whether the Commonwealth has proved that the defendant was (1) present at the scene of the crime, (2) with knowledge that another intended to commit a crime, and (3) by agreement was willing and available to help the others if necessary. *Commonwealth* v. *Giang,* 402 Mass. 604, 608 (1988). *Commonwealth* v. *Bianco,* 388 Mass. 358, 366, *S.C.,* 390 Mass. 254 (1983). *Commonwealth* v. *Soares,* 377 Mass. 461, 471-472, cert. denied, 444 U.S. 881 (1979). *Commonwealth* v. *Pringle,* 22 Mass. App. Ct. 746, 749-750 (1986). We turn to this question first in considering the defendant's appeal, which we transferred here on our own motion. We conclude that the evidence was sufficient to present a case for the jury.

On September 21, 1986, at approximately 1 A.M., an Acton police officer was in a parked cruiser with its lights off in an unlighted Sunoco station at the intersection of Route 27 and Great Road in Acton. The defendant drove a vehicle slowly on Route 27 toward the intersection, passed a lighted Shell gasoline station on her right, and turned left, heading east on Great Road. Shortly after turning onto Great Road, the defendant pulled off to the side of the road and turned the vehicle's lights off. The Acton police officer promptly drove out of the gasoline station, stopped behind the defendant's vehicle, and turned on his spotlight. He noted the registration number. There was a child perhaps six years of age, and another perhaps two years old in the back of the defendant's vehicle. The defendant got out of the vehicle and told the officer that she had stopped to pick up a baby bottle that had fallen on the floor. She reentered the vehicle and drove off heading eastward toward Concord on Great Road. The place where the defendant had parked was one-tenth of a mile from railroad tracks that ran behind the Great Road Pharmacy and was approximately three-tenths of a mile from the pharmacy.

About 2.30 A.M. the burglar alarm at the Great Road Pharmacy activated. A check by the police showed the outside to be secure, front and back. Shortly before 4 A.M., an Acton police officer saw two people in the pharmacy, one of whom ran to the rear of the pharmacy. The officer drove to the rear of the pharmacy where he saw a man later identified as the defendant's husband. The man refused to halt, dropped a money bag, and ran off into the woods in the direction of the railroad tracks behind the pharmacy. The intruders had entered by cutting through the roof. There had been extensive water damage from a steady rain. The pharmacy's glass fornt door was broken from the inside, suggesting that the other intruder had fled out the front of the pharmacy.

Shortly before 5 A.M., a Concord police officer, traveling eastbound on Great Road and aware of the break-in at the pharmacy, saw a vehicle pull out of a dark and deserted business parking lot located about one-half mile east of the pharmacy and near the railroad tracks. The officer followed the car, learned it was unregistered, and stopped it on Route 2A in Concord. The defendant furnished a Lynn address, said she was coming from a friend's house in Billerica, and was trying to get back to Lynn. There was evidence that Billerica is from ten to twelve miles northeast of Concord and that Lynn is east of Billerica. The officer told the defendant that he could order her unregistered car to be towed but that he did not want to leave the children and her stranded. She asked for and received directions to Lynn, but instead of driving toward Lynn she went to a small shopping center in West Concord, near where the railroad tracks end. She stayed there briefly, drove to Route 2, and headed east at approximately 5 A.M.

Communication between the Concord and Acton police led to a call to the Lynn police. Shortly before 6 A.M. the defendant's vehicle was in the driveway at the Lynn address she had given to the Concord police officer. About 6 A.M. the defendant left the Lynn house, entered her vehicle, and drove toward Route 128. About 6.30 A.M. a Concord police officer in his private vehicle spotted the defendant's vehicle heading west on Route 2 toward Acton. He followed her to the West Concord

shopping center and around the area several times. Concerned that the defendant would discover that she was being followed, he stopped following her. Shortly thereafter the police stopped the defendant's vehicle heading east on Route 2. The defendant's husband was found crouched on the floor of the front passenger seat, soaking wet. Each was arrested. After the defendant had been advised of her rights, she told the police that the other person who had been with her husband was named Kenny Higgins.

The jury were warranted in finding beyond a reasonable doubt that the defendant was in the vicinity of the crime. From the defendant's actions and statements, the jury were also warranted in finding beyond a reasonable doubt that (a) she knew that her husband intended to commit the crimes and (b) by agreement she was willing and available to help him if necessary. See *Commonwealth* v. *Casale*, 381 Mass. 167, 173-174 (1980).

The defendant's presence in the vicinity after midnight with her young children could have been found not to be coincidental. Her presence in the vicinity from 1 A.M. to 5 A.M. warranted a finding that she was waiting for her husband and his accomplice. See *Commonwealth* v. *Amaral*, 13 Mass. App. Ct. 238, 243-244 (1982). Her statement that she was traveling from Billerica to Lynn could have been found to be false (Acton and Concord not being way stations) and thus could have been found to evince a consciousness of guilt. See *Commonwealth* v. *Toney*, 385 Mass. 575, 584 n.4 (1982). Her decision to go to the shopping area at the end of the railroad tracks in West Concord, rather than to follow the Concord officer's directions to Lynn, tends to show further that she was still looking for her husband at 5 A.M. The evidence thus warranted a finding beyond a reasonable doubt that the defendant was a joint venturer and was an active participant in the criminal venture. Contrast *Commonwealth* v. *Jacobson*, 19 Mass. App. Ct. 666 (1985) (suspicious conduct and association with a person who commits a crime do not warrant a finding of active participation).[1]

---

[1] In discussing the adequacy of the evidence to create a jury question, we have not relied on the defendant's return from Lynn to Concord to pick

We can dispose of the defendant's other two arguments by relatively brief comment. The judge did not abuse his discretion in denying the defendant's motion in limine to bar the use of her prior convictions (armed robbery, kidnapping, assault by means of a deadly weapon). Assuming that a defendant need not have testified in order to preserve the issue, a point we have not decided (*Commonwealth* v. *Cordeiro*, 401 Mass. 843, 854 [1988]), the crimes were not so similar to the crimes charged that, on the record, we can rule that the motion in limine had to be allowed. See *Commonwealth* v. *Diaz*, 383 Mass. 73, 80-81 (1981).

The judge did not err in his instruction on consciousness of guilt. The defendant's principal objection is that, by a single reference at the beginning of his charge on consciousness of guilt, the judge permitted the jury to consider, as evidence of the defendant's consciousness of guilt, the fact that the defendant's husband was found crouched down in the vehicle that the police stopped shortly after 6:30 A.M. on Route 2. The balance of the charge on consciousness of guilt faithfully conformed to the requirements of *Commonwealth* v. *Toney*, 385 Mass. 575, 585-586 & n.6 (1982). Certainly a charge on consciousness of guilt was warranted because of specific conduct of the defendant herself. The defendant objected to the charge "as given."

Acts of a joint venturer amounting to consciousness of guilt may be attributed to another joint venturer if the acts occurred

---

up her husband. The parties' briefs do not discuss the significance, if any, of G. L. c. 274, § 4 (1986 ed.), on the question of the sufficiency of the evidence. That section provides, among other things, that a wife may assert her status as a wife as an affirmative defense against a charge of assisting her husband after his commission of a felony of which she had knowledge. The defendant unsuccessfully requested an instruction concerning the impact of G. L. c. 274, § 4, but before us does not challenge the judge's refusal to give such an instruction.

Because status as a spouse is an affirmative defense, G. L. c. 274, § 4, presumably has no bearing on the question of the sufficiency of the evidence. If it does not, the willingness of the defendant to assist her husband shortly after the commission of a felony is relevant in deciding whether she was by agreement willing to help him several hours earlier before the crimes were committed. See *Commonwealth* v. *DiStasio*, 297 Mass. 347, 361, cert. denied, 302 U.S. 759 (1937).

during the course of a joint venture and in furtherance of it. *Commonwealth* v. *Andrews*, 403 Mass. 441, 452-454 (1988). *Commonwealth* v. *Pringle*, 22 Mass. App. Ct. 746, 751-752 (1986). The judge did not explain this principle to the jury, nor was he asked to do so.

Here, the husband's act of hiding tended to prove that he had broken into the Great Road Pharmacy, an event material to the proof of the defendant's guilt. On the other hand, that evidence was not relevant to the question whether the defendant had the requisite knowledge and intention before the break-in to justify her conviction on a joint venture theory. Although it would have been better if the judge either had not focused on the husband's conduct in discussing consciousness of guilt or had explained more fully the limited extent to which the husband's conduct in the vehicle bore on the defendant's guilt, reviewing the charge as a whole, we find no reversible error.

*Judgments affirmed.*